## Appeal of McCulloch et al.

1. A child born out of lawful wedlock before the date of its father's will, rendered legitimate under the Act of May 14th, 1857, by the subsequent marriage of its father and mother after the date of its father's will, is not an after-born child within the meaning of the Act of April 8th, 1833.

2. The Act of April 8th, 1833, in providing for after-born children, means physical birth and not mere legislative legitimation after making the will.

May 28th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Mifflin county :* Of July Term 1885, No. 63.

This was an appeal of Joseph McCulloch, guardian of Ellen Fetzer and Gertie Fetzer, and T. F. McCoy, committee of William Fetzer, a declared lunatic, from a decree of the Orphans' Court of Mifflin county, distributing balance of the personal property in the hands of the administrator *cum testamento annexo* of George Fetzer, deceased.

The following are the facts as found by Rufus C. Elder, Esq., the Auditor appointed by the Court to distribute the fund in the hands of the administrator of George Fetzer, deceased.

The whole fund for distribution was $5,749.06. After paying the debts and the expenses of the audit there remained for distribution $5,426.19.

The claimants on this fund were the widow of the decedent, Jennie P. Fetzer, a child of the decedent, by her guardian, and the legatees under the will of the decedent.

A request was made before the Auditor for an issue by the guardian of Jennie P. Fetzer. This the Court granted as follows :

" Whether or not Jennie P. Fetzer, born on the 4th day of April, A. D. 1883, on the body of Mary A. Stetler, subsequently the wife of said George Fetzer and now his widow, was begotten by the said George Fetzer and is his child."

Verdict that said Jennie P. Fetzer was a child of George Fetzer and Mary A. Stetler, afterwards Fetzer.

Is Jennie P. Fetzer entitled to participate in the distribution of the fund in the hands of the administrator?

On June 24th, 1882, Mary A. Stetler went to live with George Fetzer, where she lived until his death.

April 4th, 1883, Jennie P., a daughter, was born on the body of Mary A. Stetler.

August 7th, 1883, George Fetzer made his will.

August 9th, 1883, George Fetzer was married by Rev. J. M. Reimensnyder to Mary A. Stetler.

December 14th, 1883, George Fetzer died.

Do the two Acts of Assembly, viz.: May 14th, 1857, and April 8th, 1833, place this child in the position claimed by her counsel and give her any share of this estate. Does the Act of 1857 invest this child with the same rights which a child unborn at the time of the execution of its father's will would possess?

The words of the Act are, "shall thereby become legitimated and enjoy all the rights and privileges as if they had been born during the wedlock of their parents."

The contention for the child is that the words "as if they had been born, &c.," give it the rights of a child born on the day of the wedding, after the ceremony, and as it happened in this case two days after the making of the will.

This would amount to a legal re-borning (if we may use the word) of the child, and would place her in a more favored position than any legitimate child born before actual execution of the will could attain. The spirit and intention of the Act of 1833, as the Auditor takes it, is to provide for a child born after execution of a will, and of whose existence the father was or might be ignorant at the time of making his will. The reason for it was the ignorance of the parent of its existence. There is no possibility of the presence of such reason in this case. The child was born, the father knew and acknowledged her as his child and lived in the same house with the child from April 4th, 1883, to August 7th, 1883, or her birth until the day he made his will, and indeed to the day of his death, and if he desired to provide for her had the full opportunity to do so.

"As if born during, &c.," in the Act are simply descriptive of the rights and privileges which the child would enjoy, and meant the fullest rights of a legitimate child.

Legitimation on a certain day does not give the child the rights of a child born on that day. A legitimate child born before the execution of its father's will would not take under the intestate laws by virtue of Act of 1833. This Act pro-

[Appeal of McCulloch et al.]

vides, " shall make his last will and testament and afterwards shall marry or have a child or children not provided for in such will, and die leaving a widow and child or either a widow or child or children, although such child or children be born after the death of their father, every such person, so far as shall regard the widow or child or children after-born, shall be deemed and construed to die intestate, &c."

The words and meaning of this Act are perfectly plain. They provide for an after-born child and the Auditor cannot see how they could include an after-legitimated one. In all cases where we have a judicial interpretation of this Act the necessity of the claimant being after-born is distinctly set out.

Had this child been born on August 8th, the day after the will was made, and become legitimated by the marriage of her parents on August 9th, then she would have been entitled to benefits of the Act of 1833.

This child was entitled to right of inheritance on the marriage of her parents, but there was nothing to inherit, everything being disposed of by will at that time.

Jennie P. Fetzer is not an after-born child and is not entitled to anything out of this distribution.

Distribution was made to the widow and the legatees of the decedent.

The following exception, *inter alia*, was filed to the report of the Auditor.

The Auditor erred in not decreeing to Jennie P. Fetzer, who has for her guardian Samuel J. Brisbin, her interest out of the fund as a child of George Fetzer, deceased, under the intestate laws of this Commonwealth, the will of said decedent, dated August 7th, 1883, having been revoked *pro tanto* as to said Jennie P. Fetzer by the subsequent marriage, on the 9th of August, 1883, of her father, to wit, George Fetzer, to Mary A. Stetler, her mother.

This exception was sustained by the Court, BUCHER, P. J., filing the following opinion:—

Exceptions have been filed to the report of the Auditor. The facts are plain and undisputed:

1. George Fetzer was the father of an illegitimate child, Jennie Fetzer, born on the 4th of April, A. D. 1883, on the body of Mary A. Stetler.

2. On August 7th, 1883, George Fetzer made his last will and testament, in which no notice was taken of said child, nor provision made for it, but his whole estate was left to a child by a former wife, and to his grandchildren and other legatees.

3. On August 9th, 1883, two days after the making of his

will, the said George Fetzer married the said Mary Stetler, the mother of his illegitimate child and cohabited with her.

4. On the 14th day of December, 1883, George Fetzer died.

The contention before the Auditor was that under these facts the will opened and let Jennie P. Fetzer into the inheritance the same as if George Fetzer had died intestate. The Auditor ruled against this contention upon the ground that the child was born before the date of the will, and hence the case did not fall within the Acts of May 14th, 1857, and April 8th, 1883.

The 15th section of this Act provides when any person shall make his last will and testament, and afterwards shall marry, or have a child or children not provided for in such will and die, leaving a widow and a child, or either a widow or child or children, although such child or children be born after the death of their father, every such person, so far as shall regard the widow, or child or children after born, shall be deemed and construed to die intestate, and such widow, child or children shall be entitled to such purparts, shares and dividends of the estate, real and personal of the deceased, as if he had actually died without any will.

Then the Act of May 14th, 1857, provides, "In any and every case where the father and mother of an illegitimate child or children shall enter into the bonds of lawful wedlock and cohabit, such child or children shall thereby become legitimated and enjoy all the rights and privileges as if they had been born during the wedlock of their parents.

There are no decisions under that Act, known to us, which bear upon the question on hand, but the statute gives forth no uncertain sound. It seems to assume (and it is a fair inference) that a man afterwards marrying and cohabiting with a woman who has given birth to a bastard child, was its father. In any event, the fact is not disputed, that the testator was the father of the child and subsequently married the mother, and cohabited with her. The design and theory of this Act was to lift the unfortunate illegitimate out of the dust, and endow him with the quality and dignity of an heir. Until the marriage of his mother to his natural father he is the son of nobody, and sometimes called *filius nullius*, sometimes *filius populi*. He has had a physical birth, but is incapable of heirship. His blood is corrupt and he is denied the inheritance, is not the "lawful heir," and would not, as in the ancient apologue, have been slain, that thieves could steal the inheritance. But the statute gives him a new birth, and he is an heir by the fiat of the law. There is no doubt that the legal birth is the time when heirship developed upon him. Any other construction would defeat his right as heir, and thus the

statute fail of its purpose.  The contention is that this Act of 1857 is retroactive, and was intended to make the bastard legitimate from the date of its birth, as it is "to enjoy all the rights and privileges as if it had been born during the wedlock of the parents," that is, if the parents marry, the illegitimacy of the child is purged, and it is to be considered as if it had always been legitimate.  To give the Act this construction would involve the anomaly that the child was legitimate when its parents were unmarried.  We shrink from such an interpretation of the Act.  Even if the effect of the marriage of the parents was made retroactive, so as to legitimate from birth, still a court would hold to prevent injustice that the child was only born into the inheritance upon the marriage. Then is the case within the will's Act?  That statute says " when any person shall make his last will and testament, and shall afterwards marry or have a child . . . . . not provided for in such will and die, . . . . . although such child be born after the death of the father, that is, if he has a child after making his will, even if it should be born after his death, as if to say no matter when born so it is born after making the will and unprovided for, as to such child the will is inoperative.   The third proposition in Walker v. Hall, 10 Casey, 483, is stated thus : " If a man make his will and has an after-born child or children, not provided for in such will, and dies leaving such after-born child or children, so far as regards such child or children he dies intestate, and his will is revoked *pro tanto*."   The provision for the case of birth after the decease of the testator was to meet a child in *ventre sa mere*, so that although in *esse* when the will was made, still if born after the will falls as to it:  McKnight v. Reed, 1 Wharton, 213.   In Young's Appeal, 3 Wright, 115, the child was born after making the will, and the day before the testatrix died, and will revoked.   In Grosvenor v. Fogg, 31 P. F. S., 401, one child was born a year before the death of the testator, another three years before, and a third six years prior, but all subsequent to the date of the will, and it was held that the will was revoked *pro tanto* as to them all.   The Auditor denied the claim of the child upon the ground that the object of the wills Act was to provide for a child of whose existence the father was ignorant when he made his will, and that the Act could only apply to a child physically born after the date of the will.   It must be conceded that all the cases of which we have knowledge, decided under this Act, were cases in which the child was physically born after the date of the will.   If the words *after-born* in the Act are to be confined to mean physical birth only, the child would be excluded.   On the other hand if the child's legitimate existence is to date from the marriage of its parents

and not from the day of its natural birth, the will must open so as to allow it to share in the inheritance. The object of the Act was to provide for a change of circumstances in the condition of the testator after he had made his will, which were unknown 'to him at the time of making it. Indeed, the common law theory of the revocation of wills by the subsequent birth of issue is that the testator's circumstances have so altered, that new duties have accrued to him subsequent to the date of the will, such as may be presumed to produce a change of intention. When such is the case it will amount to an implied revocation. This is based upon the idea that the testator must be supposed tacitly to have annexed a condition to his dispositions that the will shall stand, provided no such change happens in the relations of his duty as shall call for a different distribution : Coats *v.* Hughes, 3 Binney, 514. In the case on hand the testator knew of the physical existence of the claimant at the time he made his will, but at that time he owed it no duty other than that imposed upon him by the Bastardy Act found in the Penal Code. It was a stranger to his blood, but the marriage having been consummated after the date of the will, new duties developed upon him in relation to it. He was then not only under a natural and moral obligation to provide for it, but under a legal obligation as well, because it then became his child with the same force and effect as if it had been then born unto him. We think that the marriage produced such a change in the circumstances of the testator in relation to this child after the date of the will as to revoke it *pro tanto.* In this way alone can we give effect to the Act of 1857, which legitimates bastard children upon the marriage and cohabitation of their parents, and to the Wills Act of 1833, which declares that the will must open and let in a child which the testator has after the date of the will. This child acquired a legal birth after the date of the will, and it would be contrary to all equity to debar it from the inheritable qualities which the law conferred upon it by virtue of this birth. We see no error in the apportionment of the costs as made by the Auditor. This exception is overruled. The conclusion to which we have arrived requires a new distribution. April 19th, 1886, the report is re-committed to the Auditor with instructions to report a new distribution in accordance with this opinion.

The Auditor made a new distribution in accordance with the opinion of the Court, which was confirmed. The appellants, legatees of the decedent, thereupon took this appeal, assigning for error the confirmation of the Auditor's report.

*T. M. Uttley* and *J. A. McKee* (*C. S. Marks* with them), for

appellants.—Marriage under the Act of the 14th of May, 1857, is what effects the change in the rights of the child. It is legitimated as if it had been born during the wedlock of the parents. This marriage, though performed after the birth of the child, shall be regarded the same as if it had taken place before the birth. If this construction obtains the marriage is retroactive in its effect, making the child legitimate from its birth, and George Fetzer had a right to exclude it from his will.

The common-law theory which the Court below invokes to support its conclusions, we hold does not apply here.

All our rules in such cases are statutory, established by the legislature by which the common law has been either repealed or altered, or enforced by positive legislative sanction, and therefore not open to the doctrine of implied presumption: Walker v. Hall, 10 Casey, 489.

Jennie P. Fetzer is not the after-born child contemplated by the Act of April 8th, 1833. George Fetzer did not, after the making of his will, have a child not provided for in his will, and the Act, we submit, cannot by any reasonable construction be held to contemplate a child in being at the date of the will, and afterwards legitimated by a marriage ceremony. The Act by its terms applies to after-born children. The marriage does not give the child a birth. It was born on the 4th of April, 1833, four months before the execution of the will. As the learned Auditor forcibly argues, physical birth is what the Act means; if it is not, the child would have two births. The legislative mind never contemplated a case like this when this law was enacted. The clear intention of the law maker was to provide for children not in being at the date of the will. So apparent is this, and so far reaching was the legislative intent in this direction, that provision is made for children born after the death of the testator.

We can find no authority on the question raised in this case, but we submit that whenever the Court has construed the Act of April 8th, 1833, physical birth of the child after the execution of the will is what constitutes the change of circumstances, and works the revocation of the will as to the child: See Young's Appeal, 3 Wright, 115; Walker v. Hall, 10 Casey, 498; McKnight v. Reed, 1 Wharton, 212.

*Horace J. Culbertson*, for appellees.—Physical birth does not give heirship, else a bastard would inherit as well as a legitimate child. It is an inheritable or legal birth which a legitimate child has at its physical birth, and an inheritable or legal birth a bastard legitimated has at its legitimation. The spirit and intent of the legislature in enacting the Act of 14th May

1857, was clearly to give an illegitimate child, legitimated by the marriage of its parents, all the rights and privileges of a legitimate child, this being the case under the authority recognized in Big Black Creek Improvement Company *v.* The Commonwealth, 13 Norris, 455. The construction held by the Court below should obtain. "Statutes are to be construed so as may best effectuate the intention of the makers, which sometimes may be collected from the cause or occasion of passing the statute, and when discovered it ought to be followed with judgment and discretion in the construction, though that construction may seem contrary to the letter of the statute.". The construction of the Act of 14th May, 1857, and of the Wills Act of 8th April, 1833, is, however, plain and clear. Jennie P. Fetzer, bone and bone, blood and blood of George Fetzer, exalted by legal birth on the 9th day of August, 1883, to the station and dignity of his legitimate child, in all equity and in law is entitled to the rights and privileges of, and as his legitimate child had to him after the making of his will.

Mr. Justice STERRETT delivered the opinion of the Court, October 4th, 1886.

The single question, presented by the specifications of error in this case, is whether Jennie P. Fetzer, appellee's ward should be considered an after-born child of the testator within the meaning of the Act of April 8th, 1833, sect. 15, which provides : " When any person shall make his last will and testament, and afterwards shall marry or have a child or children not provided for in such will, and die leaving a widow and child, or either a widow, or child or children, although such child or children be born after the death of their father, every such person, so far as shall regard the widow, or child or children after-born, shall be deemed and construed to die intestate ; and, such widow, child or children, shall be entitled to such purparts, shares and dividends of the estate, real and personal, of the deceased as if he had actually died without any will : " Purd. 1477, pl. 18.

The facts, definitively settled by the Auditor's report and verdict of the jury, are, that Jennie P. Fetzer, born in April 1883, was the natural child of George Fetzer and Mary A. Stetler, who were afterwards lawfully married in August of same year. Two days before their marriage George Fetzer made his will, in which he bequeathed to Miss Stetler, mother of the child, $1000 "for her kind treatment of" him, and gave the residue of his estate, real and personal to his son, grandchildren and sister, without making any provision for the child born, as aforesaid, out of lawful wedlock.

Before the Auditor, charged with distribution of testator's

estate, it was contended that under the Act above quoted, in connection with the Act of May 14th, 1857, the child in question must be regarded as an "after-born" child and therefore entitled to a child's share of testator's real and personal estate. This contention was not sustained by the learned Auditor, but the Orphans' Court being of a different opinion entered a decree in her favor. From that decree this appeal was taken by those claiming under the will, and thus arises the question above stated.

The learned Auditor, as we think, rightly held that the Act of 1833, in providing for after-born children, means a physical birth, and not a mere legislative legitimation, after making the will; that it was intended to provide for children, actually born after the execution of a will, and of whose existence their father is supposed to be ignorant at the time of making his will, and not for those previously born and then in full life. This certainly accords with the plain, unambiguous wording of the Act, and we have no doubt as to its correctness. Nor do we think the Act of 1833, above quoted, has been, in this respect, qualified by the subsequent Act of 1857, which provides: "In any and every case where the father and mother of an illegitimate child or children shall enter into the bonds of lawful wedlock and cohabit, such child or children shall thereby become legitimated and enjoy all the rights and privileges as if they had been born during the wedlock of their parents." Upon no reasonable construction of this Act can it be held that appellee's ward was born after testator's will was executed. The conceded fact is, she was born four months before, and therefore in no proper sense of the term can she be regarded as an after-born child within the provision of the Act. The reasoning of the learned Auditor is so satisfactory and conclusive of the correctness of his position that it is deemed unnecessary to discuss the subject. We think the learned Court erred in not decreeing distribution of the fund in accordance with the first schedule of distribution reported by the Auditor.

Decree reversed at the costs of appellee, and it is now adjudged and decreed that the net balance, remaining after appropriations made to payment of debts and expenses of Audit, viz: $5457,19, be distributed as follows, viz: To Mary A. Fetzer, widow, $1817,06; to Joseph McCulloch, Guardian of Ellen Fetzer, minor &c., $1730,53; to Joseph McCulloch, Guardian of Gertie Fetzer, minor &c., $1730,53; to Louisa Wollaver, $173.07.