# Commonwealth, Appellant, *v.* Mackey.

<div style="float:right">222    613<br>41SC¹624</div>

*Taxation—Collateral inheritance tax—Illegitimates—Acts of May 6, 1887, P. L. 79, and July 10, 1901, P. L. 639—Constitutional law—Title of statute.*

Under the Act of July 10, 1901, P. L. 639, entitled: "An Act to regulate and define the legal relations of an illegitimate child, or children, its or their heirs, with each other and the mother and her heirs," an illegitimate child inheriting property from its mother is under no liability to pay a collateral inheritance tax thereon.

The title of the act of 1901, gives sufficient notice of exemption from collateral inheritance tax of estates passing from mothers to their illegitimate children.

Argued Oct. 14, 1908. Appeal, No. 65, Oct. T., 1908, by defendant, from judgment of C. P. Butler Co., March T., 1908,

No. 226, on case stated in suit of Commonwealth v. E. Mackey. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.  Affirmed.

Case stated to determine liability for collateral inheritance tax.  Before GALBREATH, P. J.

The opinion of the Supreme Court states the case.

The court entered judgment in favor of the defendant.

*Error assigned* was in entering judgment for defendant on the case stated.

*Thomas H. Greer*, with him *John B. Greer* and *John M. Greer*, for appellant.—He who is allowed to take for nothing a portion of a dead man's estate, shall not be heard to complain simply that he is not given it all: Mixter's Estate, 28 W. N. C. 182; Com. v. Gilpin, 3 Pa. Dist. Rep. 711; Finnen's Est., 196 Pa. 72.

Bastards, therefore, not being entitled under the common law to any inheritance, they are restricted to such provisions as the legislature has seen fit to make: Kennedy's Est., 27 W. N. C. 254; Grubb's App., 58 Pa. 55; Woltemate's App., 86 Pa. 219; Physick's Est., 2 Brewster, 179; Galbraith v. Com., 14 Pa. 258; Com. v. Stump, 53 Pa. 132; Com. v. Fergeson, 137 Pa. 595.

*W. D. Brandon*, with him *A. E. Reiber*, for appellee.—Appellee contends that this case falls within the provisions of the act of July 10, 1901, under which it is claimed he is entitled to the exemption, and the estate devised to him by his mother, is free from collateral inheritance tax under the provisions of said act: Killam v. Killam, 39 Pa. 120; Com. v. Ferguson, 137 Pa. 595; Com. v. Stump, 53 Pa. 132; Gilmore's Est., 31 P. L. J. 113; Com. v. Henderson, 172 Pa. 135.

OPINION BY MR. JUSTICE BROWN, January 4, 1909:

Sarah Mackey died June 4, 1902, the owner of real estate which she devised to the appellee, her natural son.  The commonwealth's claim to collateral inheritance tax upon this de-

vise is based upon the Act of May 6, 1887, P. L. 79, which imposes such tax upon all estates passing under the intestate laws or by devise to any person or persons "other than to or for the use of father, mother, husband, wife, children and lineal descendants born in lawful wedlock, or the wife, or widow of the son of the person dying seized or possessed thereof." The appellee was not born in lawful wedlock, and but for subsequent legislation removing from him the taint of illegitimacy as to his mother, the commonwealth would take from her devise to him, as from one to a stranger to her blood, the tax imposed by the statute.

A child born out of lawful wedlock may not know its father, but always knows its mother, and instead of the harsh rule of the common law, denying it the right to inherit, and recognizing only such rights as it can acquire, our statutes have humanely given it inheritable blood from the mother. For more than fifty years an illegitimate child and its mother have had capacity to take or inherit from each other. Recent legislation has gone still farther, and, by the Act of July 10, 1901, P. L. 639, entitled: "An act to regulate and define the legal relations of an illegitimate child, or children, its or their heirs, with each other and the mother and her heirs," it is provided that illegitimate children shall take and be known by the name of their mother and the common-law doctrine of nullius filius shall not apply as between the mother and her illegitimate child or children; that the mother and her heirs, and her illegitimate child and its heirs, shall be mutually liable one to the other, and shall enjoy all the rights and privileges one to the other, in the same manner and to the same extent as if the said child or children had been born in lawful wedlock; that the mother of an illegitimate child, her heirs and legal representatives, and said illegitimate child or children, its or their heirs and legal representatives, shall have capacity to take or inherit from or through each other personal estate, as next of kin, and real estate as heirs in fee simple, or otherwise, under the intestate laws of this commonwealth in the same manner and to the same extent, subject to the distinction of half-bloods, as if said child or children had been born in lawful wedlock; and the ex-

pressed intention of the legislature is to legitimate an illegitimate child and its heirs as to its mother and her heirs.

One of the rights of a child born in lawful wedlock is to inherit property from its mother or to take a bequest or devise from her free from any collateral inheritance tax, and all the rights and privileges of such a child are expressly given by the act of 1901 to a child whose mother was never wedded to its father. Not only are all the rights and privileges of a child born in lawful wedlock conferred upon an illegitimate child, as between it and its mother, but these rights and privileges are to be enjoyed "in the same manner and to the same extent, as if the illegitimate child had been born in lawful wedlock." If from the devise to this appellee the commonwealth may take five per cent. of its appraised value, will he take it as he would take it if he had been born to his mother in lawful wedlock? Will his right to it be the same? Will he be permitted to exercise one of the rights and privileges of a child born in lawful wedlock "in the same manner and to the same extent" as if he had been so born? But one answer can be made to these questions. By the act of 1855 an illegitimate child could inherit from its mother, subject to the payment of collateral inheritance tax, and the act of 1901 was not needed to give it that right. The expressed purpose of the act is to legitimate an illegitimate child as to its mother, and, as a proper, logical and humane incident to such legitimation, to confer upon such child every right and privilege enjoyed by a child born to wedded parents. Its terms are so free from ambiguity and doubt, and the intention of the legislature is so clearly expressed, that we need not notice the authorities cited by counsel for appellee, that a law imposing taxes like this is to be construed in favor of the subject.

The view we have expressed as to the effect of the act of 1901 upon the commonwealth's claim to a tax upon the devise to the appellee was entertained by our predecessors in Commonwealth v. Stump, 53 Pa. 132, when a special act of assembly was before the court legitimating children and conferring upon them all the rights and privileges of children born in lawful wedlock. The defendants in error in that case, George

Humphrey Stump and Abraham Harrison Stump, were two sons of Jane Pearson, who had been the housekeeper of their reputed father, Abraham Stump. Some time after their birth their mother and reputed father were married. He died in May, 1853, and by his will, executed in the preceding month, devised and bequeathed all of his estate, except two small legacies, to his wife and the above-named two sons. By his marriage to their mother they were not legitimated, for no statute up to that time had so provided. On April 28, 1854, about a year after the father's death, an act of assembly was passed, conferring upon the said George Humphrey Stump and Abraham Harrison Stump, "the illegitimate sons and only children of Abraham Stump and Jane, his wife, of the township of St. Thomas, in the county of Franklin, who were born before the marriage of their said named parents, all the rights, privileges, benefits and advantages of legitimate children," and rendering them "capable in law to inherit and transmit any estate whatever as fully and completely, to all intents and purposes, as if they had been born in lawful wedlock." These words are no more comprehensive than those of the act of 1901. The claim made by the commonwealth for collateral inheritance tax upon the devise to the two sons by their father was allowed, because at the time it took effect they were illegitimate children and not within the exempting clause of the collateral inheritance tax act of April 7, 1826, which was then in force. But, in allowing the claim of the commonwealth, WOOD-WARD, C. J., said: "The Act of Assembly removed the taint from their blood for all ordinary purposes, but not so as to exempt their estate from the Collateral Inheritance Law, which in terms includes lineal descendants not born in lawful wedlock, as well as collateral heirs or devisees. Had the legitimating act been passed before the devise took effect, the devisees would, I take it, have held the estate exempt from the Collateral Inheritance Law, for they would have been as capable in law of taking as if they had been born in lawful wedlock, but their estate vested at the death of the testator, which was in May, 1853, and if illegitimate then, the Commonwealth's right to the tax vested then also."

Objection is made that the title to the act of 1901 gives no notice of exemption from collateral inheritance tax of estates passing from mothers to their children legitimated by it. This exemption, as was properly held by the learned judge below, is the result of the act, and the constitutional requirement is not that the title must set forth what will legally and logically follow as a consequence of the proposed legislation. The title to the act of 1901 gave notice that it was for the purpose of regulating and defining the legal relations between an illegitimate child and its mother. The words used in declaring what these relations now are would be meaningless if they did not carry with them the exemption which the commonwealth would deny to the appellee.

Judgment affirmed.