# Patterson's Estate.

*Decedents' estates—Illegitimates — Nullius filius — Intestacy—*
*Wills—Secret parol trust—Provision by mother for illegitimate*
*child—Acts 1901 and 1917.*

1. The first section of the Act of July 10, 1901, P. L. 639, which placed illegitimate children of a deceased testatrix in the category of legitimates, was not repealed by the Wills Act of June 7, 1917, P. L. 403, and is still in force.

2. The common law doctrine of nullius filius as to illegitimate children no longer applies between a mother and her illegitimate child.

3. Section 21 of the Wills Act of June 7, 1917, P. L. 403, providing that children born after the making of a will and not provided for in such will, shall take a share in the parent's estate as if no will had been made, applies to an illegitimate child where the mother has made a will and not provided for such child.

4. The use of the words "born after the death of their father" does not indicate that the act was to apply only to legitimate children.

5. An illegitimate child cannot be placed in the same category with an adopted child, so far as the application of section 21 of the Wills Act is concerned, and thereby be excluded from the protection of the section, inasmuch as the section, in its reference to after-born children, applies to physical birth alone.

6. A testamentary provision for an after-born child required by section 21 of the Wills Act, whether by trust or direct provision, must appear in the will itself to prevent such child from claiming an intestacy.

7. A secret parol trust created by an understanding between the mother of an illegitimate child and the residuary legatee under her will, by which a substantial part of her estate was to be paid to the illegitimate child, is not a provision for such child as required by section 21 of the Wills Act.

8. Such a trust, if it existed at all, would owe its validity, not to the written will, but to facts depending for their proof on oral evidence dehors that instrument.

Argued January 15, 1925. Appeal, No. 171, Jan. T., 1925, by Robert L. M. Underhill, residuary legatee, from decree of O. C. Chester Co., dismissing exceptions to

auditor's report, in estate of Eleanor Robb Patterson, deceased. Before MOSCHZISKER, C. J., FRAZER, WALL- ING, SIMPSON, KEPHART and SCHAFFER, JJ. Affirmed.

Exceptions to report of Arthur P. Reid, Esq., auditor. The opinion of the Supreme Court states the facts.

Exceptions dismissed in an opinion by HAUSE, J. Robert L. M. Underhill, residuary legatee, appealed.

*Error assigned* was, inter alia, decree, quoting record.

*A. M. Holding,* of *Holding & Harvey,* for appellant.— Oral testimony, or testimony partly oral and partly written, is admissible to show that a gift in a will to a stated beneficiary, absolute in terms, is in fact in trust for another: Hoge v. Hoge, 1 Watts 163; Church v. Ru- land, 64 Pa. 432; Washington's Est., 220 Pa. 204; Blick v. Cockins, 234 Pa. 261; Fickes' Est., 59 Pa. Superior Ct. 535; Socher's App., 104 Pa. 609.

Such unexpressed trust will be engrafted on testa- trix's will as a part of the provisions thereof, and the donee will be declared a trustee: Hoge v. Hoge, 1 Watts 163; Church v. Ruland, 64 Pa. 432.

If, therefore, under the evidence a trust for testa- trix's son for $100,000 and a share of the residue is en- grafted on the provisions of testatrix's will, then there is a provision in the will for said son within the meaning of the law: Newlin's Est., 209 Pa. 456.

The trust for the unborn child of the testatrix is a provision in the will of the testatrix for such child within the purpose, the intent and the meaning of sec- tion 21 of the Wills Act of 1917: Newlin's Est., 209 Pa. 456; Randall v. Dunlap, 218 Pa. 210.

The testimony in this case shows, and it is admitted, that Alexander Patterson is an illegitimate child of the testatrix. We earnestly contend that as such he is not within the provisions of section 21 of the Wills Act of 1917, and, therefore, is not an after-born child entitled

**398**      PATTERSON'S ESTATE.

to the benefits thereof: Overseers v. Overseers, 176 Pa. 116; Wettach v. Horn, 201 Pa. 201; Hartman v. R. R., 15 Phila. 287; McCulloch's App., 113 Pa. 247; Leaming's Est., 10 Pa. Dist. R. 389; Com. v. Mackey, 222 Pa. 613.

*George Wharton Pepper*, with him *Thomas Stokes*, for appellee.—Under the existing law of Pennsylvania it is clear that an illegitimate child, with respect to its mother, is entitled to all the rights and privileges as if born in lawful wedlock: Thompson v. R. R., 41 Pa. Superior Ct. 617; Umstead's App., 31 Pa. C. C. R. 209.

There is no provision in the will for the after-born child, and the statute requires that the provision shall be in the will itself: Walker v. Hall, 34 Pa. 483; Willard's Est., 68 Pa. 327; Newlin's Est., 209 Pa. 456; Randall v. Dunlap, 218 Pa. 210; McIlvain's Est., 2 Pa. D. & C. 501.

The secret parol trust is not embodied or referred to in the will and is no part of it: Willard's App., 68 Pa. 327; Sponsler's App., 107 Pa. 95; Baker's App., 115 Pa. 590; Reagan v. Curran, 226 Pa. 265; Kemerer's Est., 251 Pa. 282; Porter v. Wolf, 272 Pa. 93.

The alleged secret trust cannot be enforced against the after-born child as a trust ex maleficio: Barnet v. Dougherty, 32 Pa. 371; Church v. Ruland, 64 Pa. 432; Socher's App., 104 Pa. 609; Hoffner's Est., 161 Pa. 331; Barry v. Hill, 166 Pa. 344; Blick v. Cockins, 234 Pa. 261; Meredith v. Bank, 275 Pa. 314.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, February 9, 1925:

The court below confirmed the report of an auditor which awarded the entire estate of a deceased unmarried woman to her only child, an illegitimate son, born after the date of his mother's will and not provided for therein: this appeal is by the residuary legatee, to whom testatrix left the bulk of her property, in the language of

the will, "without any condition, restriction or limitation whatsoever."

The will was executed June 12, 1920; the son was born August 21, 1920; and the testatrix died August 25, 1920. The child, named Alexander, still lives, and his guardian claims under sec. 21 of the Wills Act of June 7, 1917, P. L. 403, 410, asserting an intestacy as to his ward, owing to the fact that he is not provided for in the will of his mother, and contending that, since the intestate law makes this boy the sole heir of decedent, he is entitled to her whole estate.

The section in question provides: "When any person, male or female, shall make a last will and testament, and afterward......shall have a child or children *not provided for in such will,* and shall die, leaving...... such child or children, although such child or children be born after the death of their father, every such person, so far as shall regard the surviving......child or children born after the making of the will, shall be deemed and construed to die intestate; and such child or children shall be entitled to such purparts, shares and dividends of the estate, real and personal, of the deceased, as if such person had actually died without any will."

Appellant,—despite the above-quoted language of the absolute and unrestricted devise to him, and admitting the absence of any reference to appellee's ward, or of provisions for his benefit, in the will,—claimed that a secret parol trust existed, through an understanding between him, the residuary legatee, and decedent, by which a substantial part of the estate was to be paid to the child, and that the circumstances of the case made this trust tantamount to an express provision for the latter within the meaning of section 21 of the Wills Act; and therefore no intestacy existed as to him. Appellant offered to prove this alleged trust by conversations between himself and decedent; by her declarations to other persons named by him as beneficiaries under the

alleged trust; and by an unsigned memorandum in writing entitled "Distribution of Estate," which was found with the will, and which contained the initials of the residuary legatee, those of other personal friends of decedent, and of her unborn child (according to the name which the testimony shows she had intended it to bear), with amounts opposite the respective initials. To bring this memorandum into the case, appellant testified that, in their conversations, decedent had stated she would give him written instructions for the distribution of her estate; but that, as a matter of fact, she never gave or sent any such instructions to him and he did not receive the memorandum produced before the auditor until after the death of decedent.

Appellant further claimed in the court below, and contends here, that, because of illegitimacy, the boy Alexander is not within the purview of section 21 of the Wills Act or entitled to its protection. In support of this contention, which we shall dispose of first, he takes the position that, "in the absence of some qualifying expression," the word "child" in legislative enactments, as in legal parlance, generally means "only and exclusively a legitimate child" (citing Overseers v. Overseers, 176 Pa. 116, 121, and other cases), and the present child, being illegitimate, does not come within the protection of the statute. He says, further, that the language employed in section 21 of the Wills Act "negatives the thought that an illegitimate child was in contemplation of the legislature," because the provision in question uses the words "although such child or children be born after the death of their father," contending that this wording shows the act was to apply only to legitimate children, for, "under both the common law and the statute law, an illegitimate child has no father." We think it is quite clear, however, that reference to "their father," in section 21 of the Wills Act, and in prior legislation of similar import (see Walker v. Hall, 34 Pa. 483, for history of the earlier acts), was placed

there for the mere purpose of showing the lawmakers intended the provision for after-born children should apply to posthumous children; and, since in general contemplation children are never born after the death of their mother, the legislature evidently thought it unnecessary to mention such a contingency. The words "their father" cannot warrantably be given the significance which appellant claims for them; and in considering the contention that the word "child" always means one born in lawful wedlock and not an illegitimate, we must keep in mind the fact that at the time of the adoption of the Wills Act there was upon the statute books of Pennsylvania the Act of July 10, 1901, P. L. 639, which by section 1 provides in express terms that "illegitimate children shall take and be known by the name of their mother, and the common-law doctrine of nullius filius shall not apply as between the mother and her illegitimate child or children, but the mother and her heirs and her illegitimate child and its heirs shall...... enjoy all the rights and privileges, one to the other, in the same manner and to the same extent as if the said child or children had been born in lawful wedlock." This section was not repealed by the Wills Act of 1917, and is still in force. Subsequent sections, namely 2, 3 and 4, though formally repealed, were incorporated in the Intestate Act of 1917 as sections 15a, 15b and 15c (P. L. 429, 439); of these, section 4 particularly states the intent of the legislature (see Com. v. Mackey, 222 Pa. 613, 616) "to legitimate an illegitimate child as to its mother and her heirs," and the effect of the act clearly was to place such a child, so far as its mother and her estate are concerned, in the position of a legitimate. All subsequent legislation, including the Wills Act of 1917, must be understood accordingly, and, there being no express or implied exclusion of illegitimate children from the benefits of the last mentioned statute, it must be construed, in the light of the Act of 1901, as though illegitimates were expressly included as entitled

to the benefits of section 21. Moreover, when reading cases involving the construction of wills and the rights of illegitimate children thereunder, decided prior to the Act of 1901, its absence at that time must be kept in mind.

Appellant's attempt to place an illegitimate child in the same category with an adopted child so far as the application of section 21 of the Wills Act is concerned, and thereby to exclude the former from its protection (Boyd's Est., 270 Pa. 504), lacks force, because the provision in question, in its reference to after-born children, applies to physical birth alone: see McCulloch's App., 113 Pa. 247, 255. An adoption was not considered in law as tantamount to physical birth (see Boyd's Est., supra, 507), for the purpose of satisfying the requirements of section 21 of the Wills Act in that regard, until the recent Act of May 20, 1921, P. L. 937, which amended the section in question by incorporating, after the phrase "child or children," the words "either by birth or by adoption." The prior legislation (Act of June 1, 1911, P. L. 539, and Act of May 28, 1915, P. L. 580), giving certain rights of inheritance to adopted persons as if "born the lawful child of the adopting parents," and "as fully as if......born a lawful child," could not make an adopted child one physically born to the parent as contemplated by the language of section 21 of the Wills Act, and did not undertake to place it in that category for all purposes, as the Act of 1901 undertook to place illegitimate children of a deceased testatrix in the category of legitimates. The court below correctly determined that the illegitimacy of the child here involved did not deprive him of the protection of the Wills Act.

As to appellant's other major contention, the court below was right in deciding that the testamentary provision for an after-born child required by section 21 of the Wills Act, whether by trust or direct provision, must appear in the will itself to prevent such a child from

claiming an intestacy. The statute requires this construction, for it says, "When any person......shall make a last will......and afterwards shall......have a child......*not provided for in such will*......every such person, so far as shall regard the surviving...... child......born after the making of the will, shall be deemed and construed to die intestate."

We base the above conclusion as to the meaning of section 21 of the Wills Act on the plain words of the statute itself, after reading and considering the many cases cited by counsel on both sides of this interesting controversy; and we think it would serve no useful purpose to review those authorities. It is sufficient to say that, while some of the cases employ language which counsel for appellant have excerpted in support of their contentions, and others use language on which counsel for appellee rely, none of them, in our opinion, determines anything contrary to the decision reached in the present case.

Appellant's briefs contain abundant authority that, under some circumstances, one taking an absolute devise or bequest may, on evidence aliunde the will itself, be held trustee for another. The question here, however, is not whether a trust for the child could be proved by evidence outside the will; it is whether Alexander was provided for in the will; and, as to this, there can be no question but that he was not so provided for. On the contrary, the testamentary provision on which appellant relies, whereby the devise is made to him, excludes by its terms, as shown in the first paragraph of this opinion, all other persons, including Alexander, and he is not mentioned in any other part of the will.

"Every part of a will must be in writing" and the trust in this case, if it could exist, would owe its validity, "not to the [written] will," but to facts depending for their proof on oral evidence dehors that instrument: see the opinion of GIBSON, C. J., in Hoge v. Hoge, 1 Watts 163, 215. Without regard to whether this evi-

dence was properly admissible, or whether, if compe-
tent, it was sufficient to establish the alleged trust
(propositions argued in the briefs of counsel), such
trust,—even if accepted as proved for the purposes of
determining this case, and as showing a substantial pro-
vision for testatrix's after-born child,—not being incor-
porated in the will itself, fails to meet the requirements
of the law of Pennsylvania, and this results in an in-
testacy so far as the rights of Alexander to his mother's
estate is concerned. The court below properly so de-
termined.

The decree is affirmed, costs to be paid out of the
estate.