Taylor Estate.

Argued April 16, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Morris H. Sheer,* with him *Sanson, Sheer & Sanson,* for appellants.

*Arno P. Mowitz,* with him *Mowitz & Kohlhas,* for G. H. Sloan, appellee.

*Laurence Brunswick* and *Mayer, Magaziner & Brunswick,* for trustee.

OPINION BY MR. JUSTICE DREW, May 26, 1947:

William McDaniels, George McDaniels and Sadie B. Sachleben, appellants, at the audit of the First and Final Account of the trustee for their father, William McDaniels, deceased, life tenant under the will of his sister, Alma McD. Taylor, deceased, sought to exclude George H. Sloan, child of their deceased sister, from participation as a remainderman, on the grounds that he is illegitimate and was adopted by persons unrelated to testatrix. The learned auditing judge, agreeing with appellants' contention, eliminated Sloan from participation. However, the court en banc unanimously reversed and awarded to Sloan his share of principal and income. These appeals followed.

Testatrix, Alma McD. Taylor, died on January 18, 1938, leaving a will, dated June 13, 1935, paragraph Third of which provides: "All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind and nature and wheresoever situate, I give, bequeath and devise as follows: . . . (b) One-half (½) thereof unto my Trustee hereinafter named, IN TRUST, NEVERTHELESS, to let and demise the real estate, to invest the personal property and to reinvest the same and to pay the net income therefrom quarterly unto my brother, William McDaniels, for and during

the term of his natural life . . . Upon his death, I order and direct that the principal of this Trust Fund, as well as any unpaid accumulations of income shall be paid to his issue, absolutely . . ."

The life tenant, William McDaniels, died on December 3, 1945. He had five children, William, George and Sadie, appellants; Katherine (Katie), who died in 1912, leaving to survive her two children, LeRoy Webb and Katherine McDaniels Webb; and Rachael, who died September 29, 1911, leaving to survive her a son, George H. Sloan, appellee herein, who was born on July 28, 1910, and legally adopted on February 13, 1912, by Frank A. Sloan and his wife, persons in no way related to testatrix or the life tenant.

It is not necessary to consider the question whether the auditing judge erred in his rulings and findings as to whether appellee, George H. Sloan, was a legitimate child born in lawful wedlock. Appellants do not, and could not, dispute the fact that if appellee is the legitimate child of the life tenant's daughter, Rachael (and had not been adopted by the Sloans), he would be entitled to participate as a remainderman under the will of Alma McD. Taylor. Even if he be the illegitimate child of Rachael, he still is entitled to participate.

While it is well settled that by testatrix's bequest to the issue of the life tenant, William McDaniels, she is presumed to have intended legitimate and not illegitimate issue (*Appel v. Byers*, 98 Pa. 479; *Bealafeld v. Slaughenhaupt*, 213 Pa. 565, 62 A. 1113; *Kemper v. Fort*, 219 Pa. 85, 67 A. 991), nevertheless, if appellee be considered to have been born out of lawful wedlock and thereafter was legitimated before the death of the life tenant, the requirement of legitimacy, as far as appellee is concerned, has been met. See *Thorn Estate*, 353 Pa. 603, 46 A. 2d 258; *Miller's Appeal*, 52 Pa. 113.

Appellee was legitimated as to his mother and her heirs by the Act of July 10, 1901, P. L. 639, and therefore the learned court en banc properly held that he was

entitled to share in the principal and income upon the death of the life tenant. Section 1 of that statute provides: ". . . illegitimate children shall take and be known by the name of their mother, and the common-law doctrine of *nullius filius* shall not apply as between the mother and her illegitimate child or children. But the mother and her heirs, and her illegitimate child and its heirs, shall be mutually liable one to the other, and shall enjoy all the rights and privileges one to the other, in the same manner and to the same extent, as if the said child or children had been born in lawful wedlock." In speaking of this statute, this Court said, in *Patterson's Estate*, 282 Pa. 396, 402, 128 A. 100: ". . . the Act of 1901 undertook to place illegitimate children of a deceased testatrix in the category of legitimates." We also said, in *Commonwealth v. Mackey*, 222 Pa. 613, 615-6, 72 A. 250: ". . . the expressed intention of the legislature is to legitimate an illegitimate child and its heirs as to its mother and her heirs . . . Not only are all the rights and privileges of a child born in lawful wedlock conferred upon an illegitimate child, as between it and its mother, but these rights and privileges are to be enjoyed 'in the same manner and to the same extent, as if the illegitimate child had been born in lawful wedlock.' "

We are certain appellee was not barred from participation in distribution under the will by his adoption. Testatrix provided: "Upon his [William McDaniels'] death, I order and direct that the principal of this Trust Fund, as well as any unpaid accumulations of income shall be paid to his *issue*, absolutely . . ." (Italics added). "A bequest to a number of persons not named, but answering a general description, is a gift to them as a class, where a contrary intention does not appear from the will": *Wood's Estate*, 321 Pa. 497, 500, 184 A. 13. No such contrary intent here appearing, appellee clearly falls within the class of "issue" set forth in the will, in that he was the natural issue of the life tenant, and either was born in lawful wedlock or was legitimated by

the Act of 1901, supra. In *Russell's Estate,* 284 Pa. 164, 166, 130 A. 319, this Court, in interpreting the word "issue" as contained in Section 15 of the Wills Act of 1917, not here involved, held that an adopted child is "an 'issue' of his *natural* parents only." Therefore, appellee takes by virtue of the testamentary designation of a class to which he belongs, notwithstanding his adoption, and does not take by right of inheritance. We think the following statement in the opinion of President Judge VAN DUSEN, for the court en banc, is conclusive: "Neither Section 16 (b) of the Intestate Act of 1917 nor the Act of April 13, 1887, P. L. 53, Sec. 1 . . . attempts to do more than to regulate the right of inheritance. As said in Anderson's Estate, 23 D. & C. 332, the question is one of identity and not of the right of inheritance. The claimant is still the legitimated child of Rachel, and his status as such is not changed by the adoption. The limited effect of the statutes relating to adoption brings out by contrast the wider effect which we think should be given to section one of the Act of 1901. Of course the testatrix had the right to make her bequest to claimant either by name or class description, so the real question is whether he comes within the description of 'issue'. Physically he is certainly within the description and legally he has been made so by Section 1 of the Act of 1901 so far as the mother's family is concerned. Patterson's Estate, 282 Pa. 396, is an analogous case. There it was held that since the Act of 1901 an illegitimate child was to be regarded as an afterborn child under Section 21 of the Wills Act, even though before 1901 it had been held that in absence of some qualifying expression the word 'child' in legislative enactments, *as in legal parlance,* means only and exclusively a legitimate child (citing Overseers v. Overseers, 176 Pa. 116, 121). It remains but to be said that in absence of statute directing a different construction, the fact of adoption does not change the claimant's description as issue of William McDaniels whether being construed as made

before or after the adoption. We are fortified in this conclusion by the fact that Section 16 (b) of the Intestate Act of 1917 expressly provided that an adopted person was not to be entitled to take from or through his natural relatives, whereas Section 16 (b) of the Wills Act of 1917 makes no such exclusionary provision."

For these reasons, the modified decree of the learned court below must be affirmed.

Decree affirmed, at appellants' costs.