346 A.2d 750

**In the Matter of the Trust Under Deed of Stephen Edward TRACY, Settlor.**

**Appeal of Stephen Edward TRACY, IV.**

Supreme Court of Pennsylvania.

Argued Dec. 3, 1974.

Decided Oct. 30, 1975.

Joseph E. Lastowka, Jr., Kassab, Cherry & Archbold, Media, for appellant.

George J. Hauptfuhrer, Jr., Norman E. Donoghue, II, Dechert, Price & Rhoads, Philadelphia, for appellee, Stephanie Tracy Culbertson Kerns.

John A. M. McCarthy, Philadelphia, for appellee, First Penna. Banking & Trust Co., Trustee and Margaret T. Ritteman, Substituted Trustee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

In November 1944, Dr. Stephen Tracy (settlor) established a revocable inter vivos trust. It provided that income be paid to settlor and his wife for the remainder of their lives; after their death, the income was to be paid, in equal shares, to settlor's children, Margaret Tracy Ritteman and Stephen Tracy, Jr. Upon the death of either child, "the share of such child shall be paid over to his or her issue per stirpes." The question presented in this case is whether the natural daughter of Stephen Tracy, Jr. (Stephen Jr.), who was adopted by one unrelated to settlor in 1951, is entitled to share in the distribution to the "issue" of Stephen Jr. The orphans' court concluded that she is entitled to share in that distribution and this appeal ensued.[1] We affirm.

Most of the facts in this case were stipulated. A daughter Stephanie (the appellee) was born to Stephen Jr., and his then wife, Cora Hepburn Tracy, on December 25, 1938. Stephen Jr. and Cora were divorced on August 21, 1942, and Cora took custody of Stephanie. On January 9, 1943, Stephen Jr. married his second wife, Thelma Budd Tracy. On November 28, 1944, settlor exe-

1. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1975).

cuted the deed of trust now before us.[2] Stephen Tracy IV (appellant) was born to Stephen Jr. and Thelma on December 28, 1945. Stephanie's mother Cora married her second husband, Harlow Culbertson on May 30, 1946.

On April 14, 1949, settlor was declared incompetent and a guardian was appointed for his estate. From at least this time until his death on February 22, 1956, he lacked the capacity validly to amend or revoke the deed of trust. On June 21, 1951, Stephanie was adopted by her stepfather, Harlow Culbertson, with the consent of Stephen Jr. All life estates in the half of the trust allotted to the issue of Stephen Jr. terminated with his death on March 14, 1972.

The corporate fiduciary filed an account and requested instructions whether, by reason of Stephanie's adoption, she was precluded from taking under the trust as "issue" of Stephen Jr. Stephanie (now, by marriage, Stephanie Kerns) appeared before the orphans' court to assert her right to participate in the distribution and Stephen IV, the only other child of Stephen Jr., appeared to oppose her participation.

The orphans' court received, subject to an objection concerning its relevance, testimony from Stephanie and her mother regarding Stephanie's relationship with the settlor, her grandfather.[3] The orphans' court concluded that this evidence was inadmissible because irrelevant and therefore disregarded it. Nevertheless, we believe that we may consider certain facts as admitted.[4] At various times, even after her parents were divorced in 1942

2. The deed of trust was amended on February 13, 1945. The terms of the amendment are not material here.

3. Stephen IV offered no evidence designed to illuminate the intent of the settlor, relying solely upon what he regarded as the proper construction of the words of the instrument.

4. Before the orphans' court rendered its adjudication, Stephanie submitted a request for findings on these facts in accordance with her evidence at the hearing. Stephen filed a response to the request for findings stating that he had no objection to the re-

and prior to the execution of the deed of trust in 1945,[5] Stephanie received Christmas and birthday gifts from settlor. From 1942 to 1945 settlor paid the tuition for Stephanie's attendance at nursery and elementary school. During the period between the divorce of Stephanie's parents and the execution of the deed of trust, settlor entertained Stephanie as a visitor in his home from 10 to 12 times per year. While at their summer home in the summers of 1944, 1945, and 1946, settlor and his wife frequently picked up Stephanie at her family's nearby cottage for visits with them.

The orphans' court concluded, without reference to this evidence of an affectionate relationship between Stephanie and her grandfather, that the provision for the "issue" of Stephen Jr. clearly and unambiguously included Stephanie, notwithstanding her adoption by Harlow Culbertson in 1951. From the decree directing that she be permitted to share in the distribution of the portion of the corpus allocated to such "issue" Stephen IV appeals, urging that only he is entitled to take under that provision of the deed of trust.

The principles applicable to the construction of trust instruments are essentially the same as those used in the construction of wills.[6] The intent of the settlor, if not contrary to law, must prevail.[7] Canons of construc-

---

quested findings "except for relevancy." We therefore conclude that these facts are undisputed, the disagreement between the parties being confined to their legal significance.

5. Because the question presented in this case involves construing a deed of trust executed in 1944 and amended in 1945, the evidence of Stephanie's relationship to settlor was largely confined to the period prior to and immediately surrounding the execution of that instrument.

6. *In re Girard Corn Exchange Bank*, 418 Pa. 112, 115 n. 4, 208 A. 2d 857, 859 n. 4 (1965); *Pew Trust Estate*, 411 Pa. 96, 106–07, 191 A.2d 399, 405 (1963); see *Erny Trust*, 415 Pa. 8, 202 A.2d 30 (1964).

7. E. g., *Thomas Estate*, 457 Pa. 546, 551–52, 327 A.2d 31, 34 (1974); *Pew Trust Estate*, 411 Pa. 96, 106–07, 191 A.2d 399, 405 (1963), and authorities cited by those cases.

tion may be applied if the intent of the settlor is otherwise unclear.[8] However, as we said in *Chambers' Estate*, 438 Pa. 22, 24, 263 A.2d 746, 747 (1970):

> "[A]rtificial rules of testamentary construction have been legislatively and judicially created merely to aid in what is always the primary goal—to ascertain and to give effect to the testamentary purposes of the testator. Therefore, where the testator's actual intent can be ascertained, such intent must prevail over any artificially-deduced 'intent' which the rules of construction might dictate."

The pertinent provision of the deed of trust provides that, after the death of the settlor and his wife, Stephen Jr. was to receive one-half of the trust income. At his death, his share "shall be paid over to his issue per stirpes." Had settlor, his wife, and Stephen Jr. all died before Stephanie's adoption in 1951, there would be no question that she would have been entitled to participate in this distribution as the daughter of Stephen Jr. The terms of the trust instrument clearly identify Stephanie as one of the objects of settlor's bounty. It is unlikely that settlor would have desired to exclude Stephanie from benefits under the trust merely because his son gave his consent to her adoption by her stepfather. Absent any evidence of an intent to exclude Stephanie be-

---

8. The function of canons of construction is well stated in 5 American Law of Property § 21.2, at 129 (A. J. Casner ed. 1952):

> "When the construction process goes into operation to give preciseness of meaning to language that is not clear and unequivocal, the basic search is for the intention of the transferor. By hypothesis, however, he has not manifested his intention with respect to the particular difficulty. Thus, the search for the intention of the transferor must of necessity be changed to a search for the intention it is reasonable to attribute to the average transferor with respect to the particular situation. A rule of construction which may be established as a guide to the interpretation of a donative transaction is nothing more than the formulation of the intention it is thought reasonable to attribute to a transferor in giving preciseness of meaning to language he has employed."

cause of an unanticipated adoption, and given the clear evidence in the trust instrument of an intent to include her, we are not prepared to apply legal rules of construction to thwart settlor's intent. Our conclusion is reinforced by the basic equality of treatment adopted by settlor for his descendents of the same generation.

In *Taylor Estate*, 357 Pa. 120, 53 A.2d 136 (1947), a testimony trust was established providing income for life to the testatrix' brother. Upon the death of the brother, the corpus was to be distributed among his "issue." The brother had five children, two of whom predeceased him. Of the two children who predeceased the brother, each left a child. One of these grandchildren of testatrix' brother was adopted, before the death of the brother, by a person unrelated to testatrix or her brother. When the brother died, the question arose whether this grandchild, adopted "out" of the family of testatrix' brother, was entitled to participate in the distribution as "issue" of the brother. This Court held that the adoptee was entitled to share in the distribution notwithstanding his adoption by a stranger to his grandfather's blood.

We find that settlor's intent was to include Stephanie as "issue" of Stephen Jr. Further, to the extent that legal principles are needed to construe this deed of trust, we find *Taylor Estate* to be persuasive authority for including Stephanie in the trust distribution.

Decree affirmed. Each party pay own costs.

JONES, C. J., filed a concurring opinion.

NIX, J., concurs in the result.

JONES, Chief Justice (concurring).

I feel compelled to concur in the result reached today by the majority but solely on the basis that the law governing the rights of adopted children at the time the settlor executed the instant deed of trust mandates this re-

sult. *See* Wills Act of 1917, June 7, P.L. 403, § 16, 20 P.S. §§ 227, 228.

The settlor executed the inter vivos trust in 1944 [1] making himself and his wife life tenants. The Wills Act of 1917 did not specifically excluded adopted children from sharing in the estate of their natural parents whereas the Intestate Act of 1917, June 7, P.L. 429, § 16(b), 20 P.S. § 102, made clear that "adopted persons shall not be entitled to inherit or take from or through their natural parents, grandparents, or collateral relatives. . . . (*See Cave's Estate*, 326 Pa. 358, 366, 192 A. 460, 464 (1937) for a complete interpretation of that latter provision.)

This Court in *Taylor Estate*, 357 Pa. 120, 53 A.2d 136 (1947), construing a testamentary trust posing the same problem as we face today, decided in favor of the adopted child, stating:

> "It remains but to be said that in [sic] absence of statute directing a different construction, the fact of adoption does not change the claimant's description as issue of [the life tenant of the trust] whether being construed as made before or after the adoption. We are fortified in this conclusion by the fact that Section 16(b) of Intestate Act of 1917 expressly provided that an adopted person was not to be entitled to take from or through his natural relatives, whereas Section 16(b) of the Wills Act of 1917 makes no such exclusionary provision."

357 Pa. at 124–125, 53 A.2d at 138–9. Accord, *In re Buffington's Trust*, 26 Pa.D. & C.2d 551, 10 Chest. 328 (1963); *In re Price's Estate*, 54 Berks 67 (1962).

Were this present case one involving a like situation to be construed under the Wills Act of 1947, April 24, P.L. 89, § 14, 20 P.S. § 180.14(6),[2] however, Stephanie Tracy

---

1. The trust was amended once in 1945.

2. Repealed by Acts 1972, June 30, P.L. 508, No. 164, § 3, effective July 1, 1972. *See* 20 Pa.C.S.A. § 2514(7). The 1972 Act incorporates the above quoted provision of the 1947 Wills Act *in toto*.

308

Kerns would be precluded from taking any share of her natural father's estate by virtue of her adoption prior to the death of the settlor. The Act reads as follows:

"Adopted children. In construing a will making a devise or bequest to a person or persons described by relationship to the testator or to another, any person adopted before the death of the testator shall be considered the child of his adopting parent or parents and *not the child of his natural parents* . . . ." (Emphasis added).

For the reasons set forth above, I concur in the result.