BEATTY, Justice.
Loree Anne Barnett, a minor, pro ami, appeals from an order of the Mobile Circuit Court disallowing her claim to benefits under a private trust. We affirm.
Loree Anne Barnett is the natural child of the marriage of David Beck and Peggy Beck. David and Peggy divorced. Peggy received custody of Loree, and then Peggy married Jerome Barnett. Barnett adopted Loree, the order of adoption naming her as Loree Anne Barnett.[1]
David Beck also remarried. His second wife was Patricia Shepherd Beck. David and Patricia had two children, Melissa Beck and David Eugene Beck II.
David Beck and Robert Stolz were Mobile County sheriffs deputies who were killed in the line of duty on November 17, 1975. Following their deaths, the Mobile Press encouraged public subscriptions for the benefit of their widows and children with the publication of several newspaper articles soliciting donations to a memorial fund established for their benefit by Sheriff Tom Purvis. Television Channel 10 also participated in this solicitation, and its news director, Carlton Cordell, was chairman of the memorial fund. An account was opened in a Mobile bank to receive donations, which were placed in a police officers’ memorial fund.
Subsequently, a corporation was organized, named the Beck-Stolz Memorial Fund. The by-laws of this fund, which received the money previously collected, named as beneficiaries not the widows and children of the two slain officers, but “the widows and children of law enforcement officers who are killed in the line of duty.”
Litigation over this beneficiary designation ensued by way of declaratory judgment. The Mobile Circuit Court, following a hearing and findings by an advisory jury on October 12, 1984, held that the purpose of the fund was for the aid and benefit of the Beck and Stolz widows and children and awarded the funds to the plaintiffs, i.e., Patricia Beck Powers (Beck’s second wife, who had remarried); Melissa Beck (Beck’s daughter by Patricia); David E. Beck II (Beck’s son by Patricia); Joycelyn Stolz Evans (Stolz’s widow, who had remarried); and David Judson Stolz (Stolz’s son).
On November 2, 1984, Loree Anne Barnett, as the natural child of David Beck, filed her motion, apparently as an inter-venor, for a declaration that she was entitled to a distributive share of the Beck-Stolz Memorial Fund. An answer to this motion set up the Beck divorce, the award of custody, and Loree’s adoption by her stepfather. A response to this answer quoted from Code of 1975, § 26-10-5, respecting the right to inherit following adoption, as well as § 43-8-48(1).
Following a hearing, the trial court ruled:
“Children of widows of deceased law enforcement officers for whom funds are collected by public solicitation do not'include children of such law enforcement officers previously adopted by third persons.”
Citing Code of 1975, § 43-8-1(2) and § 26-10-5(c), appellant Loree maintains that she is a “child” who takes by way of intestate succession from the parent whose relationship is involved, i.e., David Beck in this instance. Loree also maintains that other statutory authority, namely § 25-5-61(3), evidences a legislative intent to protect children in her situation.
Section 25-5-61(3) establishes under workmen’s compensation law a conclusive presumption of dependency in favor of “mi *350 nor children under the age of 18 years,” and this has been held to be so even though the child has been adopted and is living with the adopted parents at the time of the death of the natural parent. Central Foundry Co. v. Brown, 381 So.2d 635 (Ala.Civ.App.1979), cert. denied, 381 So.2d 637 (Ala.1980).
Section 26-10-5, prior to its amendment effective May 7, 1984, gave an adopted child the right of a double inheritance in that the child could inherit not only from its adoptive parents, but from its natural parents as well. Central Foundry Co. v. Brown, supra. The 1984 amendment, however, removed from the former statute the language which allowed the adopted child to inherit property from its natural parents. Loree, the appellant, concedes that this is not an inheritance case, but she insists that, based upon the inheritance law extant at the time the fund was established, her right to a share in the fund must be implied. Likewise, Loree cites § 43-8-1(2) of the probate code as another example of her implicit right to share in the fund. That section defines the word “child” as including “any individual entitled to take as a child under this chapter by intestate succession from the parent whose relationship is involved.”
We agree with appellant that this is not a case of intestate succession; rather, it is a case of determining rights under this private trust.[2] In other words, the question is whether or not Loree Anne Barnett is one of the “children” in this trust, which was established, as the trial court has found, “for the aid and benefit of the Beck and Stolz widows and children.”
In Restatement (Second) of Property, “Donative Transfers,” § 25.5 (Tent.Draft No. 8,1985), and comment a, at 98, we find:
“Gifts to ‘Children’ — Child of Person Adopted by Another
“When the donor of property describes the beneficiaries thereof as ‘children’ of a designated person, the primary meaning of such class gift term excludes descendants of such person in the first generation who have been adopted by another, if such adoption removes the child from the broader family circle of the designated person. It is assumed, in the absence of language or circumstances indicating a contrary intent, that the donor adopts such primary meaning.” (Emphasis added.)
“Comment:
“a. Rationale. When a child has been removed from the family circle of the child’s natural parents by adoption, it is reasonable to conclude that the donor would no longer intend such adopted child to be treated as continuing on the same basis as those children who remain in the family circle the donor is benefiting. This section recognizes this reasonable conclusion by excluding in such case the adopted-out child from the primary meaning of the gift to ‘children.’ When the adoption out does not remove the child from the family circle of the designated person, as in the case of an adoption by the spouse of the person whose children are named as beneficiaries, the adopted-out child is not excluded. The facts and circumstances of a particular case may overcome the rules of this section and lead to the inclusion or exclusion of an adopted-out child that otherwise would be excluded or include in the primary meaning of the gift to ‘children.’ ”
The following example of the effect of the stated principle is given in illustration 7 at 103:
“7. 0 transfers property by will to T in trust. T is directed to pay the income to O’s son S for life and on S’s death to distribute the trust property ‘to S’s children.’ O’s son has two children by a first marriage which ended in divorce and S’s ex-wife was awarded custody of the children. This was the situation at *351 the time 0 executed his will. After O’s death, S’s ex-wife remarried and her new husband, with S’s acquiescence, adopted S’s children. S remarries and has two children by his second marriage. S’s second wife died and he married again. S’s third wife adopted the children of S by his second marriage. S dies. The children of S by his second marriage are included in the primary meaning of the gift to S’s children, because the adoption is by S’s spouse which does not remove them from S’s family. The facts, however, that the first wife has custody of S’s children by his first marriage and that her second husband has adopted S’s children in the custody of his wife, support the rule of this section that the adopted-out children of S are excluded from the primary meaning of the gift to S’s children.”
Cases from various jurisdictions are cited in support of the rule, among them Stamford Trust Co. v. Lockwood, 98 Conn. 337, 119 A. 218 (1922). In that case the donor executed a testamentary trust which gave the income to his children for life and the principal to their descendants. Following the donor’s death, one of his sons had a daughter who was adopted “out of the family.” When this child’s natural father died, she made claim upon the trustee for a distribution of the principal of the donor’s trust. The court held that her legal adoption by others while her father was alive caused her to lose her right to participate in the distribution as a representative of her natural father. It is apparent from the opinion that the court could find no language contained in the will setting up the trust, or other circumstances, evidencing a contrary intention in the testator.
The question of the testator-donor’s intention was also in issue in De Prycker v. Brown, 358 So.2d 1140 (Fla.Dist.Ct.App.1978). One Caraway had a natural child, Myra, by his first marriage, which ended in divorce. The first wife obtained custody of Myra, who was later adopted by her mother’s second husband. Caraway married again and had two other daughters by his second wife. He made a will naming these two daughters as his beneficiaries. Later, after the birth of two more children, this will was revoked by a new will, which contained a residuary clause naming “my children who survive me” as his ultimate beneficiaries. Caraway also established at or near this time an inter vivos trust for each of his four children by his second marriage.
In a declaratory judgment action brought after Caraway’s death, the Florida court held that the adoption had severed Myra’s status as a “child” of her natural father and thus she was not included in his will as one of “my children surviving me.” The court added at 1142:
“[A]ll of the circumstances surrounding his instructions to his attorney toward the preparation of the will as above recited, taken in conjunction with the fact that he had excluded her specifically in his first will, point to the conclusion that he did not intend in this last will to make her a beneficiary.... There is nothing in the evidence to indicate that he intended to include her in his last will.”
Perhaps a closer analogy to the instant case is In re Wolfs Estate, 98 N.J.Super. 89, 236 A.2d 166 (1967). A child named Ray Franklin Wolf was born of the marriage of C. Franklin Wolf and his wife Helen; C. Franklin and Helen later divorced and each remarried. Helen married Samuel E. Printz, who adopted his stepchild, Ray Franklin Wolf, whose name was changed to Ramon Bryant Printz. C. Franklin and his second wife had two children following their marriage.
C. Franklin later executed a trust instrument and a will. His will left the bulk of his estate to the trustees. Among the trust’s beneficiaries were the “Settlor’s children.”
Shortly after C. Franklin died, his father, Clarence R. Wolf died, leaving a testamentary trust with, inter alia, the “issue” of Clarence’s four children as beneficiaries. The New Jersey court defined the issue thusly:
*352 “[T]he issue to be resolved is not whether Ramon would take as an heir at law or next of kin if C. Franklin or Clarence had died intestate. Rather, the basic questions presented by the suits ... involve a construction of the writings to determine whether Ramon is an intended beneficiary (1) within the meaning of the word ‘children,’ as that word is used in the deed of trust of his natural father C. Franklin, and (2) within the meaning of the word ‘issue,’ as that word is used in the will of his grandfather Clarence....
“To ascertain the intent of the settlor and testator, respectively, requires a reading and analysis of the language used in the trust instrument and the will in light of all the surrounding facts and circumstances.... Further, at least so far as the grandfather’s will is concerned, ‘[n]ot only may the circumstances surrounding the execution [thereof be considered] but so also may the circumstances from then on until the testator’s death.’ ” (Citations omitted.)
Regarding the trust established by the father, C. Franklin Wolf, the court, after an analysis of the trust instrument, found:
“The trust indenture, unlike the grandfather’s will, contains intrinsic evidence that the word ‘children’ is not to include all natural children of the settlor. The language of the deed of trust makes it clear that its benefits — derived in the first instance from the proceeds of insurance policies on the settlor’s life — are to be limited to the family unit resulting from C. Franklin’s second marriage, to the ‘Settlor’s wife, Verna Wolf,’ and the two children of that marriage. Such is the evident implication to be drawn from the various provisions of the deed of trust, including that authorizing invasion of the corpus of the Article B trust ‘for the benefit of the Settlor’s wife and Set-tlor’s children.’ Were there any doubt as to the settlor’s intent to benefit only the children of his second marriage, it is eliminated by the last paragraph of Article B, providing for a gift over to charities ‘in default of any issue of Settlor and Settlor’s said wife.’ ”
As to the trust established by the grandfather, Clarence, the court stated:
“With respect to both the income and the corpus distribution of Trust B, the will provides:
“ ‘In the event any of my said children are then deceased, said deceased child’s share shall be paid to his or her issue, if any, per stirpes, and in the event that any such deceased child should not leave issue, his or her share then shall be equally divided among the remaining children above-named and the issue of any of said children who may then be deceased, per stirpes.’ (Emphasis added)”
And the court added:
“There is nothing in the will or in the surrounding circumstances to warrant a determination that the word ‘issue’ as used therein is to have a more limited meaning so as to exclude a grandchild of the testator merely because he had been adopted by another. ‘In [the] absence of statute directing a different construction the fact of adoption does not change the claimant’s description as issue of * * *.’ In re Taylor’s Estate, 357 Pa. 120, 53 A.2d 136, 138 (Sup.Ct.1947). The grandfather knew of his grandson’s adoption. Had he intended to eliminate Ramon from those who would otherwise take under the will as ‘issue’ of C. Franklin, he could have so provided. He did not.” (Emphasis added.)
Based upon the writing and the surrounding circumstances, what was the intent of the settlors of the trust whose terms are in issue? Was it intended that Loree Anne Barnett be considered as a child of David Beck?
The record contains evidence more than ample to establish that Loree Anne Barnett was not intended by the settlors to be included. The initial announcement of the establishment of the fund by Sheriff Purvis referred to “the widows and children of Deputies David Beck and Robert Stolz” because of the “uncertain financial future of their widows and children.” A press *353 reference identified the beneficiaries thusly, omitting Loree:
“In addition to his widow, the former Patricia Shepherd, the 31-year-old Beck is survived by a son, David, and a daughter Melissa. A native of Mobile, he is also survived by his parents, Mr. and Mrs. Stephen Beck, one sister, nieces, nephews and other relatives.
“Stolz, a 34-year-old native of Quinton, Alabama, is survived by his widow, the former Joycelyn Smith, and a son David. He is also survived by his parents, Mr. and Mrs. Clarence Stolz, three brothers, one sister, nieces, nephews and other relatives.”
The transfer of the assets of the Beck-Stolz Educational Trust Fund, established by the Pleasant Valley Optimist Club in response to the public appeals, was publicized in the press by publication of a photograph of Melissa Beck, David Beck II, Mrs. Patricia Beck, Mrs. Joycelyn Stolz, and David Stolz. Loree was neither pictured nor mentioned in the accompanying caption or in the article which followed. The accompanying newspaper article referred to the children this way. “Beck is survived by two children, Melissa, 6, and David, 18 months. Stolz’s son, David, is 3V2.”
A benefit concert featuring nationally known television and country music personalities was held at the Mobile Municipal Auditorium for the “families of Deputies David Beck and Robert Stolz.” The wives and children of Deputies Beck and Stolz were in attendance and were repeatedly pointed out and identified as the beneficiaries of the funds collected from the public attending the benefit concert. The Beck children in attendance were Melissa and David, but not Loree.
Although the order of the trial court erroneously concluded as a matter of law that the adoption itself of Loree by Barnett foreclosed her entitlement to share in the fund, its finding that she was not entitled nevertheless was required by the facts adduced at the hearings in the case which established Melissa and David, but not Lo-ree, as the objects of the public’s donations. The trial court having reached the correct decision, it is immaterial that a wrong reason was given. Bennett v. Bennett, 454 So.2d 535 (Ala.1984).
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES and HOUSTON, JJ., concur.
ADAMS, J., not sitting.

. It is for this reason that we refer to appellant as Loree Anne Barnett throughout the opinion.

. A private trust is "[o]ne established or created for the benefit of a certain designated individual or individuals, or a known person or class of persons, clearly identified or capable of identification by the terms of the instrument creating the trust, as distinguished from trusts for public institutions or charitable uses." Black's Law Dictionary (5th ed. 1979) at 1355.