Hillsborough Probate Court,
Jan. 3, 1950.          No. 3859.

AMOSKEAG TRUST COMPANY, *Ex'r and Tr.*

*v.*

ALICE G. HASKELL *& a.*

*Warren, Wilson, Wiggin* and *Sundeen,* for the plaintiff, filed no brief.

*Hamblett, Griffith* and *Moran (Mr. Griffith* orally), for the defendants, Hughes and Youngman.

*Robert C. Laing,* guardian *ad litem, pro se,* filed no brief.

*Hansen* and *Towle* (of Illinois) and *McLane, Davis, Carleton* and *Graf (Mr. Alvin L. Hansen* orally), for the defendants, Parker Kendall, Daskey, Bastien, Korol, Anderson and Crawford.

The remaining defendants entered no appearance.

LAMPRON, J. "The law is too well settled in this jurisdiction to require extended citation, that the testator's intent is the sovereign guide in the interpretation of a will and this intent being ascertained, the Court must enforce it unless it is illegal or impossible to do so." *Stearns* v. *Matthews,* 94 N. H. 435, 437; *Osgood* v. *Vivada,* 94 N. H. 222. "The testator's intention "is determined as a question of fact by competent evidence, and not by rules of law." *Edgerly* v. *Barker,* 66 N. H. 434, 447; *Osgood* v. *Vivada, supra,* 224. Such competent evidence are "the situation of the testator, the surrounding circumstances, his family and relatives, the devisees and legatees, the nature, amount, and situation of his property, facts tending to place the Court in the position of the testator. . . . " *Stratton* v. *Stratton,* 68 N. H. 582, 586; *Fletcher* v. *Cotton,* 81 N. H. 243, 246; *Bellows* v. *Page,* 88 N. H. 283, 286.

The first question on which advice and direction is sought reads as follows: "(a) Should not paragraph XIV and XV be included in and made a part of the trust estate created under Paragraph XVI so that the plaintiff may settle its account as executor?" The answer to this question is yes.

The testator was a layman eighty-six years of age. His was a sizeable estate. He personally drafted the will and codicil in question. The language used in these documents, as well as their composition and their general form, show that the testator possessed some knowledge of the meaning and use of legal terms and of the manner in which a will and a codicil should be drafted. However it would be unreasonable in construing the documents which he drafted for the purpose of ascertaining what his intentions were, to assume that he knew and appreciated all of the legal niceties which would have enabled one so versed to spell out the testator's intent in approved legal form.

The nature of the functions to be performed by the fiduciary under clauses XIV and XV do not differ essentially from those to be performed under clause XVI, except that the latter, involving more beneficiaries and more property, are consequently more complex. No preference can be assumed in favor of one fiduciary over the other as it is one and the same corporation acting in different legal capacities. Nor can it seriously be contended that the testator did not intend to have his estate administered and distributed to the objects of his bounty in the manner which would be the most efficient so to do without detracting in any way from the mode in which he wanted these benefits conferred.

By including in and making paragraphs XIV and XV a part of the trust estate created under paragraph XVI, thereby permitting the plaintiff to conclude its functions as executor and to carry out as trustees the duties imposed in paragraphs XIV and XV while concurrently performing its duties under paragraph XVI, carries into effect, in a practicable manner, the wishes of the testator as expressed in his will. See 3 Page on Wills (Lifetime *ed.*) 510.

Question (b) deals with certain problems pertaining to the interpretation of paragraph XV of the will and for the sake of clarity this question will be divided into four parts. The first part of this question asks if the trust created under paragraph XVI is the trust referred to in the following sentence; "This bequest to lapse at the termination of the trust, and I order and direct that my Trustees deed same to the said Elizabeth K. Korol, or her descendant or descendants, in equal

shares; if no descendant or descendants to take, same to become a part of the residuum of my estate." The answer to this part of question (b) is yes. An application of the rule that the language of a will is to be given a literal interpretation, in the absence of evidence that the testator used it in a different sense (*McAllister* v. *Hayes*, 76 N. H. 108) leads to the conclusion that by those words the testator had to be referring to the trust in paragraph XVI. The reason therefor being that in all the paragraphs preceding paragraph XV the testator was talking of a "trust fund." The words of paragraph XVI would be the only ones which would lend themselves to the appellation of "the trust."

A reading of this will as a whole, to ascertain the intent of the testator, gives the same result. The testator by the wording of this paragraph anticipated that "the termination of the trust" which would make the bequest lapse could take place during the lifetime of said Elizabeth K. Korol. All the other trusts expressly or impliedly created in the paragraphs of the will other than paragraph XVI are perpetual as to duration. That in paragraph XVI is the only one which contemplates a termination within the lifetime of said Elizabeth K. Korol and the only trust which can reasonably be understood to be referred to by the testator in said paragraph XV.

Question (b) second part asks if the word "same" when used in that paragraph means both "the residence and the furnishings therein contained." The word "same" is used five times in said paragraph. If we tried to interpret its meaning each time it is used by a strict application of the rules of whether it refers to the last antecedent or to an antecedent other than the last, we would be accentuating the form of expression rather than the substance of this lay testator's intent as expressed in his will.

The first time the word "same" is used the testator must necessarily have been referring to the residence at 113 Myrtle Street. At this point he has fully described the object of his bequest and devise i.e., the residence, the furnishings therein and the grounds on which the residence is located, which together constitute the subject matter of this paragraph. From then on whenever the word "same" is used it refers to all these three components which are treated by him as an entity, one establishment consisting of a residence, furniture and grounds, the subject matter of his gift.

Question (b) third part reads as follows "Under paragraph XV, may the trustee expend money to repair the furniture named therein or to replace worn out furniture?" As to repairing the furniture the

reasoning used in answer to the second part of this question compels the conclusion that the trustee not only may but must keep the furniture in a state of repair. As to the trustee expending money to replace worn out furniture the answer is that it cannot. If the testator had intended the trustee to replace the furniture he could have said so very easily and very plainly. He did not do so. It must be that he did not so intend. Power to replace is not expressly or impliedly given to the trustee by the terms of the trust, nor is it necessary to carry out the purposes of the trust. It cannot therefore incur expenses for that purpose. Restatement, Trusts. s. 188, *comment* e. See Anno., 172 A. L. R. 1283.

Question (b) fourth part requesting instruction as to the rights of the children or heirs of Elizabeth K. Korol in the event of her death and the rights of the parties in the case of loss of said buildings and contents by fire needs no answer at this time. *Orr* v. *Moses*, 94 N. H. 309, 312.

The following four questions will be discussed together:

"(c) Under the last sentence of paragraph XVI, can any income be divided until the death of all persons given a life interest, namely: Adela Parker Kendall, Verona C. Kendall, Mary Campbell McGlone, Mrs. Florence B. Fisher and Alice G. Haskell. (d) The last sentence of paragraph XVI of the will directs that upon the death of Adela Parker Kendall and others 'the total net income be divided per stirpes among the children of my brother, Elmer' etc. Does this mean that upon the death of the survivor of those named all income which has accrued up to that time and has not otherwise been paid out is thereupon to be divided 'among the children of my brother Elmer'; or does it mean that this accrued income in effect shall become a part of the principal and that the current income only is thereafter to be distributed? (e) Under the provisions of Paragraph XVI does the trust terminate at the death of the survivor of Adela Parker Kendall, Verona C. Kendall and Mary Campbell McGlone, or ten years after the death of all the persons mentioned in the last sentence of said Paragraph XVI? (g) [added by agreement] Have any of the interests of the remaindermen under the trusts created by the will indefeasibly vested, and if not, when will they indefeasibly vest?"

This estate has produced since the decease of the testator and is now producing a substantial income much more than is necessary to pay the annuities provided for in the will and the expenses of administration. "Where a testator establishes a fund the income from which is to be used for certain purposes but that income is in excess of the

amount required for those purposes, the question whether the excess shall accumulate and be added to the principal or shall be otherwise disposed of depends primarily upon the intent of the testator." *New Haven Bank* v. *Hubinger*, 117 Conn. 417, 420.

As to the income over and above that needed for annuities and expenses which this estate has produced during the period from the death of the testator to the death of Adela Parker Kendall on or about April 7, 1947, there is no specific provision in the will providing for its distribution. Furthermore a reading of paragraph XVI leads to the conclusion that the testator did not intend to have anyone, other than the annuitants, receive any income from his estate until the death of said Adela, because it is not until the happening of that event that he provides a formula by which the beneficiaries of the residue, other than the annuitants, are to be determined. As to the surplus income produced during that period it is to be added to the principal of the residue and become a part thereof.

As to the income, over and above that needed for annuities and expenses, produced from and after the date of the decease of said Adela, the will discloses on the part of the testator an intention that it be distributed instead of accumulated. The language used by him in disposing of the income at the decease of all the annuitants, viz: "the total net income" must be given effect to if not inconsistent with the law, nor with the general intent of the whole will taken together. *Dennett* v. *Dennett*, 40 N. H. 498, 500. The testator need only have said net income if he had not intended before the death of all annuitants, a distribution of income, other than the payment of annuities, which were to be paid "regardless of whether the income of my estate be sufficient or not." By his use of the word "total" he indicated that he was contrasting the total net income then available to the children of his brother Elmer etc., with the partial net income which he intended them to receive from and after the death of said Adela.

There are also other good reasons for adopting this view. The testator possessing considerable banking experience must have been aware that his estate would produce considerable income. His will shows a definite intent on his part to make the children of his brother Elmer and their descendants the principal beneficiaries under his will. He was personally acquainted with all of Elmer's children some of whom were beyond middle age at the time he made his will. If the income were to be accumulated during the lives of all of the annuitants he would probably be preventing some of these beneficiaries from receiving personally any substantial benefits from his estate

which seems, under the circumstances, very unlikely. Furthermore by accumulating this income for that period, the Federal Government would thereby become the principal beneficiary of his estate, as one of the parties so aptly phrased it, instead of those whom his will reveals to be the chief objects of his bounty.

There being no specific instructions in the will to accumulate the excess income produced by his estate after Adela's death a contrary intention on the part of the testator, may be inferred. *Sanborn* v. *Clough*, 64 N. H. 315, 320; *Stevens* v. *Douglass*, 68 N. H. 209. An intention that it be distributed is at least impliedly contained in the will, and a consideration of all the elements from which it is legally permissible to infer the testator's intent leads to the conclusion that he wanted this income distributed.

We will consider next the date of termination of the trust, and the vesting of the interests of the remainderman. The trust is to terminate ten years after the death of all the persons mentioned in the last sentence of said paragraph XVI. This trust does not become a dry trust at the death of all the annuitants. The testator had a discernible purpose in extending the trust for a period of ten years after this date. *Bellows* v. *Page*, 88 N. H. 283, 284. He wanted to keep his estate in Elmer's family for a reasonable period and so provide a comfortable income for Elmer's children, some of whom might well not survive the longest liver of the annuitants plus ten years. He did not want his estate to be paid to Elmer's children before that time and presently disposed of by their wills or taken by their spouses or collateral heirs in case of their intestacy. He wanted that period to elapse before the remainder became indefeasibly vested thereby keeping his property in the hands of Elmer's children and their descendants.

The plaintiff is therefore instructed as follows: From and after the death of said Adela to the death of the last survivor of the five annuitants, the trustee is to pay the two hundred dollars per month, formerly received by Adela, "equally among the children of my brother Elmer and the descendant or descendants of any child or children that may be dead, such distribution be per stirpes and not per capita. If any of the children of my brother Elmer shall die without issue, the share or shares of such deceased child or children shall be divided per stirpes among the child or children of my brother Elmer and the descendants." Helen Day Hughes and Charles B. Youngman being included among them, as will hereinafter appear. The identity of the recipients of this sum to be determined monthly each time a payment becomes due.

As to the surplus income during that period it is to be distributed annually among the same class of persons but the identity of the members of the class is to be determined on the date that each payment becomes due, i.e. one year after the date of the death of Adela and each year thereafter.

Upon the death of all of the life annuitants, all of the net income is to be distributed annually for a period of ten years among the members of the same class, the identity of the members to be determined when each payment becomes due. It is our opinion that when the testator used the words "among the children of my brother Elmer in like manner as above set forth" he meant according to the same formula stated above, not "to the same persons stated above."

At the expiration of the ten year period, the principal is to be distributed to those who are then members of the class, and no final vesting can occur until this time.

The remaining question (f) reads as follows, viz: "Does the adoption of Helen Day Hughes and Charles B. Youngman affect their rights to take under said paragraph XVI? They are respectively the daughter and son of Helen K. Youngman, a daughter of the testator's brother Elmer. Their mother died in 1918, and after the death of her mother, Helen Day Hughes was adopted, at the age of one, by a paternal aunt and uncle on August 29, 1918, in the State of Minnesota. Charles B. Youngman was adopted by his paternal grandparents, on March 14, 1922, at the age of six, in the State of Illinois. It is agreed that at the time of the execution of the will, the testator had full knowledge of the existence and adoption of both of these persons and that he knew they were the children of Helen K. Youngman and descendants of his brother, Elmer Kendall.

There is no doubt that Helen Day Hughes and Charles B. Youngman come within the class described in the will as "the descendant or descendants of any child or children [of my brother Elmer] that may be dead." *Hale* v. *Hale*, 237 Ill. App. 410, 413; 12 Words & Phrases 220.

It seems clear also that the testator intended to include them among the beneficiaries so described by him. "These grandchildren were living at the time the testator made his will. He knew them and selected them as the objects of his bounty." *Osgood* v. *Vivada*, 94 N. H. 222, 224.

And the provisions of R. L., c. 345 do not affect their rights in any way. "Since adoption is wholly statutory, all of its incidents must be. . . . Any differences between the rights and duties of an adopted

child and those of one not adopted are to be marked out only by legislation." *Young* v. *Bridges*, 86 N. H. 135, 138. This case holds that for the purpose of inheritance of property by heirship the adopted child becomes the child of the adopting parents and ceases to be the child of the natural parents, the reason being to avoid the unfair result of giving a dual right of inheritance to an adopted child as against the single right of a child not adopted to inherit from his blood kin only.

However, neither the wording of the adoption statute, nor the reason given for its interpretation in *Young* v. *Bridges, supra,* militate against the right of an adopted child to receive property by will from a natural kin. Moreover this right is recognized in that case. "The reference in the section to such property when received by 'inheritance' is indecisive and without bearing on the right of the child to inherit. The word is clearly used to include property coming to the child from his own relatives by will. And property coming from them by heirship may have been received before the adoption." *Young* v. *Bridges, supra,* 141.

*Case discharged.*

All concurred.

ON MOTIONS FOR REHEARING. After the foregoing opinion was filed, the defendants Hughes and Youngman filed a motion for rehearing as did the defendants Parker Kendall, Daskey, Bastien, Korol, Anderson and Crawford.

LAMPRON J. One of the points on which rehearing was sought is the following: "In view of the court's decision it now becomes necessary to decide what effect, if any, the payments monthly of the sum of $100.00 to Elizabeth Korol (under paragraph XV after the death of Adela Parker Kendall) has upon the amount payable to her in satisfaction of her share in the presently distributable income of the trust estate."

Our answer is that the trustee must decide in the exercise of its discretion if payments are to be made to Elizabeth Korol under said paragraph and the amount thereof not to exceed of course $100 per month. This exercise of discretion is controlled by the will only to the extent that the trustee must be able to reasonably conclude that Elizabeth's circumstances make it "necessary that she receive assist-

ance." *Hills* v. *D'Amours*, 95 N. H. 130, 139; *Woodward* v. *Jolbert*, 94 N. H. 324, 326.

The trustee must consequently review the prior exercise of its discretion in the light of the court's opinion. If it decides that, applying the effect of this opinion retroactively it would not, in the exercise of a reasonable discretion, have made payments to Elizabeth, or it would have made lesser payments, then the amount, if any, which has thus been overpaid to Elizabeth is to be charged against her share of the presently distributable income.

The motions for rehearing present no other questions not already fully considered. Accordingly the order is

*Motions for rehearing denied.*

All concurred.