## Dickinson Estate

*Wisler, Pearlstine, Talone & Gerber*, for accountant.

*Paul A. Davis, 4th*, of *Smillie, Bean & Scirica*, and *Edward M. David*, of *Saul, Ewing, Remick & Saul*, for Ella Mae Bishop.

*Robert B. Brunner*, for Reno Supplee Godshall.

TAXIS, P. J., July 1, 1955.—The first and final account of Montgomery Norristown Bank and Trust Company (formerly Norristown-Penn Trust Company and Penn Trust Company), testamentary trustee for Reno Dickinson (now Heft) was examined and audited by the court on June 3, 1955.

Israel B. Dickinson died on July 8, 1914, leaving a will dated September 17, 1906, probated on July 31,

1914, by the terms of which he gave one seventh of his residuary estate in trust to pay the income thereof to his daughter, Reno Dickinson, for life. He then provided:

"And from and immediately after her decease, the said share of my estate is to go to, and I hereby give, devise, and bequeath the same to her lawful child or children her surviving, and the issue of any who may then be dead leaving lawful issue, equally, share and share alike; . . ."

Reno Dickinson (now, by marriage, Reno Heft), life tenant, died on September 24, 1954. Her death ended the trust and the principal thereof is now distributable.

Reno Heft had two children both of whom survive. By her marriage, to Perry Trumbore, she had a daughter, Ella Mae Trumbore (now, by marriage, Ella Bishop), born May 31, 1907. By Reno Heft's second marriage, to Harvey Supplee, she had a second daughter, Reno Supplee (now, by marriage, Reno Supplee Godshall), who was born May 24, 1924. Ella Mae Trumbore was adopted by Reno's sister, Mary A. Shaffer, by decree of the Court of Common Pleas of Montgomery County on September 8, 1908. There is no dispute that Reno Supplee Godshall is entitled to take, but the question arises:

Is Ella Mae Trumbore, a grandchild (who was adopted by others in 1908), barred from taking a share of residue which was bequeathed to the daughter's "children", by the will of decedent who died in 1914? This is the sole question to be decided.

The rights of adopted persons in these circumstances are governed by the law in effect on the day of testator's death, in this case, July 8, 1914: Corr's Est., 338 Pa. 337; Ashhurst's Est., 133 Pa. Superior Ct. 526.

In Corr's Estate, supra, it was stated at page 340 that:

"Prior to the passage of the Wills Act of June 7, 1917, P. L. 403, it was the established rule that adopted children could not participate in testamentary gifts to 'children'. As the testator died five years before the effective date of the Wills Act, [of 1917] this is the rule that must govern the interpretation of his will."

Bregy, Wills Act, at page 3,154, succinctly summarizes the rights of adopted persons under wills of persons dying before 1917 as follows:

"As that case [Corr's Estate, supra] illustrates, the old law will continue to be important in construing wills making future gifts, because both the Act of 1917 and the present Act [1947] apply only to wills of testators who die after the respective effective dates. . . . *Corr's Estate*, and the cases it cites, also make the following points clear as to the law before the 1917 act: (1) the law governing gifts to 'children' etc. was unaffected by statutes giving adopted persons the right to inherit; (2) adopted children were not included in such gifts regardless of when the adoption took place; and (3) although the presumed interpretation could be rebutted by contrary intention appearing in the will, extrinsic evidence was inadmissible to show that the testator had the adopted child in mind."

"It would seem only fair that conversely the adopted person would remain the child of his natural parents for purposes of will construction in the absence of statute."

See Taylor's Est., 357 Pa. 120, and Anderson's Est., 23 D. & C. 332, both indicating that the child remains the child of his natural parents in the absence of a statute to the contrary. I conclude, therefore, that Ella Mae Trumbore Bishop is entitled to a share in this gift, her adoption in 1908 notwithstanding.

The account shows a balance for distribution of $3,230.16.

Testator died prior to the enactment of the direct inheritance tax, and there is no transfer inheritance tax due the Commonwealth on the estate now being distributed.

The balance for distribution is awarded one half to Ella Mae Bishop and one half to Reno Godshall.

The account is confirmed, and it is ordered and decreed that Montgomery Norristown Bank and Trust Company (formerly Norristown-Penn Trust Company and Penn Trust Company), testamentary trustee, as aforesaid, forthwith pay the distributions herein awarded.

And now, July 1, 1955, this adjudication is confirmed nisi.