98 N.J. Super. 89 (1967)
236 A.2d 166
IN THE MATTER OF THE ESTATE OF CLARENCE R. WOLF, DECEASED.
IN THE MATTER OF THE ESTATE OF C. FRANKLIN WOLF, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1967.
Decided November 30, 1967.
*91 Before Judges GAULKIN, LEWIS and KOLOVSKY.
Mr. C. Zachary Seltzer argued the cause for appellant Ramon Bryant Printz (Mr. Santo J. Salvo, attorney).
Mr. Edward Miller argued the cause for respondent Charles E. Gant, guardian ad litem for Alice Kay Wolf and Margaret Mary Wolf (Messrs. Gant and Miller, attorneys).
Mr. Robert K. Bell argued the cause for respondent executors and trustees.
The opinion of the court was delivered by KOLOVSKY, J.A.D.
Defendant Ramon Bryant Printz (Ramon) who, following the remarriage of his mother, had been adopted by his stepfather, Samuel E. Printz, appeals from judgments which determined that he "is not entitled to share" under the deed of trust dated September 1, 1964 executed by C. Franklin Wolf (C. Franklin) his natural father nor under the will of Clarence R. Wolf (Clarence) his natural grandfather.
The judgments were entered in separate actions for advice and instructions, one instituted by the trustees under the deed of trust and the executors of the father's estate; the other by the executors of the grandfather's will. The facts in each case were stipulated. The trial court "combined" the two actions for purpose of disposition, deeming them to "involve essentially the same facts and issue of law."
The stipulations reveal the following:
On May 19, 1942 a son, named Ray Franklin, was born to C. Franklin and his then wife Helen. On March 21, 1946 C. Franklin and Helen were divorced. Thereafter each remarried  C. Franklin to Verna, Helen to Samuel E. Printz.
Under the terms of a judgment of adoption duly entered in the Atlantic County Court on June 30, 1949, Samuel E. *92 Printz adopted his stepson Ray Franklin Wolf and the boy's name was changed to Ramon Bryant Printz. Both natural parents, Helen and C. Franklin, had executed written consents to the adoption and change of name.
Two daughters were born of C. Franklin's marriage to Verna: Alice in 1948 and Margaret in 1950.
On September 1, 1964 C. Franklin executed a deed of trust and a will. The will bequeathed testator's entire estate, except his tangible personal property, to the trustees under the deed of trust. The terms of the deed of trust are detailed infra; it suffices to note here that among the beneficiaries named are the "Settlor's children."
C. Franklin died on May 2, 1966. Five days later, on May 7, his father Clarence R. Wolf died, leaving a will dated September 23, 1964. By that will, the provisions of which will be summarized later, "issue" of Clarence's four children, C. Franklin, Mary Elizabeth, John and Barbara, are designated to take as beneficiaries in particular circumstances.
The stipulation of facts submitted by the parties is silent as to the relationship and contacts, if any, between Ramon and his natural father, C. Franklin, following the boy's adoption in 1949. As to Ramon's association with his paternal grandfather, Clarence, we are told only that:
"In 1963, 1964 and a portion of 1965 Clarence Wolf gave Raymond Prince certain sums of money to go to school in California; at the same time, Clarence Wolf was providing funds for other persons not related to go to school, and during most of his life he was providing scholarships to any qualified person in the name of a deceased daughter and a deceased son."
In ruling that Ramon was not entitled to share either under C. Franklin's deed of trust or under Clarence's will, the trial court said:
"The sole issue is the effect of the adoption of Ramon Bryant Printz upon his legal status as an heir of Clarence R. Wolf and C. Franklin Wolf. To resolve this issue we must turn to the adoption *93 statutes of New Jersey, and in particular to N.J.S.A. 9:3-30 wherein it states:
`A. The entry of a judgment of adoption shall terminate all relationships between the child and his parents, and shall terminate all rights, duties, and obligations of any person which are founded upon such relationships, including rights of inheritance under the intestate laws of this State; * * *' (Emphasis added)." (93 N.J. Super., at p. 86)
Were the issue that stated by the trial court, a reversal of its determination would be mandated by Nickell v. Gall, 49 N.J. 186 (1967), decided some five months after the trial court rendered its opinion in the instant case. Under Nickell it is clear that despite his adoption Ramon is entitled to inherit from his natural parents under the intestate laws of this State; this because N.J.S.A. 9:3-30 on which the trial court relied was not enacted until 1953, four years after Ramon's adoption. The statute in effect at the time of the adoption, R.S. 9:3-7, preserved the adopted child's right to inherit from his natural parent. It provided that upon the entry of a decree of adoption, "the rights, duties, privileges and relations theretofore existing between the child and his parent or parents shall be in all respects at an end, excepting the right of inheritance;" (Emphasis added)[*]
In fact, however, the issue to be resolved is not whether Ramon would take as an heir at law or next of kin if C. *94 Franklin or Clarence had died intestate. Rather, the basic questions presented by the suits for instructions involve a construction of the writings to determine whether Ramon is an intended beneficiary (1) within the meaning of the word "children," as that word is used in the deed of trust of his natural father C. Franklin, and (2) within the meaning of the word "issue," as that word is used in the will of his grandfather Clarence. In re Morton, 48 N.J. 42, 46 (1966).
To ascertain the intent of the settlor and testator respectively requires a reading and analysis of the language used in the trust instrument and the will in light of all the surrounding facts and circumstances. In re Morton, supra; In re Cook, 44 N.J. 1, 6 (1965); In re Voorhees, 93 N.J. Super. 293, 298 (App. Div. 1967). Further, at least so far as the grandfather's will is concerned, "[n]ot only may the circumstances surrounding the execution [thereof be considered] but so also may the circumstances from then on until the testator's death." In re Cook, supra, 44 N.J., at p. 6.
We conclude from our reading of the two instruments, in light of all the surrounding facts and circumstances relevant to each, that (1) Ramon is included within those designated as "issue" of C. Franklin Wolf in the will of the grandfather Clarence R. Wolf but (2) he is not among those intended to be included as beneficiaries by the reference in his natural father's deed of trust to the "Settlor's children."

The Clarence R. Wolf Will
The grandfather's will, dated September 23, 1964, after setting forth a number of specific bequests to his widow Mary and various charitable and educational institutions, directs, in effect, that so much of his residuary estate as *95 shall qualify for the maximum permissible marital deduction under the federal estate tax law be held in trust (Trust "A") to pay the net income to his widow Mary and to distribute the principal as she may by will appoint, and in default of appointment, to her estate.
The remainder of the residuary estate is directed to be held in a separate trust (Trust "B"). The income of Trust B is to be divided into five shares and distributed "not less frequently than monthly." One of the shares is to be paid to the widow Mary and one each to testator's named children, C. Franklin, Mary Elizabeth, John and Barbara.
Upon the death of Clarence's wife Mary, the corpus of Trust B is to be divided into four equal shares and one of said shares paid over to each of Clarence's four children, C. Franklin, Mary Elizabeth, John and Barbara.
With respect to both the income and the corpus distribution of Trust B, the will provides:
"In the event any of my said children are then deceased, said deceased child's share shall be paid to his or her issue, if any, per stirpes, and in the event that any such deceased child should not leave issue, his or her share then shall be equally divided among the remaining children above-named and the issue of any of said children who may then be deceased, per stirpes." (Emphasis added)
An identical substitutionary provision appears in Paragraph 17 of Clarence's will which directs that if his wife Mary should predecease him, then the entire residuary estate is to be distributed in equal shares among his four named children.
Since C. Franklin predeceased his father, his share of Clarence's estate is to be paid to his issue, per stirpes. Ramon, C. Franklin's natural son, is within the description "issue," a term which in its normal usage connotes at least all progeny or blood descendants. Stickel v. Douglass, 7 N.J. 274, 277 (1951); In re Wehrhane, 23 N.J. 205, 208 (1957).
*96 There is nothing in the will or in the surrounding circumstances to warrant a determination that the word "issue" as used therein is to have a more limited meaning so as to exclude a grandchild of the testator merely because he had been adopted by another. "In [the] absence of statute directing a different construction, the fact of adoption does not change the claimant's description as issue of * * *." In re Taylor's Estate, 357 Pa. 120, 53 A.2d 136, 138 (Sup. Ct. 1947). The grandfather knew of his grandson's adoption. Had he intended to eliminate Ramon from those who would otherwise take under the will as "issue" of C. Franklin, he could have so provided. He did not.
Our determination is in accord with what appears to be the uniform treatment of the problem by other courts. Annotation, "Adoption by third person as excluding one who otherwise answers to the description of a testamentary beneficiary," 96 A.L.R.2d 639, 641 (1964); see also In re Taylor's Estate, supra; Amoskeag Trust Co. v. Haskell, 96 N.H. 89, 70 A.2d 210, 217 (Sup. Ct. 1950), motion for rehearing denied and opinion modified 71 A.2d 408 (Sup. Ct. 1950); In re Myres' Estate, 205 Misc. 880, 129 N.Y.S.2d 531 (Surr. Ct. 1954). As the Annotation points out,
"Decisions which do not appear to have been controlled by statutes directing particular construction of terms in a will have uniformly held that terms describing a beneficiary by his relationship to another include one who would ordinarily fall within the described relationship, but because of an adoption bears a relationship different from any that would answer the testamentary description. Terms of this sort discussed have included `child' or `children,' `heirs at law,' and `descendants.'"
A legislature may, of course, create a statutory presumption that in construing a will or other document an adopted child is not to be considered the child of his natural parent. Statutes to that effect now exist in Pennsylvania. See 3 Powell on Real Property, § 339, p. 18 (1967). But our Legislature has not so provided, although in the converse situation involving the relationship of the adopted child to *97 its adopting parent, the Legislature has directed that "[i]n the construction of any testamentary or other document executed subsequent [to January 1, 1954], an adopted child shall be deemed lawful issue of the adopting parent unless such document shall otherwise provide." N.J.S.A. 9:3-30(B).
Further, while the legislation dealing with the right of adopted children to inherit on intestacy from their adopting parents has consistently evidenced a public policy that adopted children shall be on the same level as natural children of the adopting parent, a like consistency is not to be found in the successive statutes dealing with the right of an adopted child to inherit from its natural parent, particularly where, as here, the child has been adopted by its stepfather. (See discussion, supra.) We therefore deem it inappropriate to refer to the latter statutory provisions as an aid to interpretation, a course followed, since the public policy was clear, in the converse situation involving the right of an adopted child to take under a will as a child of his adopting parent. Cf. In re Coe, 42 N.J. 485, 490 (1964).

The Deed of Trust of the father C. Franklin Wolf
The trust agreement provides that the trustees therein named are to be beneficiaries under nine insurance policies on the life of the settlor, C. Franklin, and that on the latter's death the proceeds of the policies, "together with any other assets which may be added to the trust," are to be held and disposed of as directed by the deed of trust. If the "Settlor's wife, Verna Wolf" survives him, so much of the principal of the trust as represents one-half of the settlor's "adjusted gross estate" is to be held and disposed of under "Article A  The Marital Trust" for the wife's sole benefit in order that that one-half may "qualify for the marital deduction allowable for Federal Estate tax purposes."
The remainder of the trust principal  or all thereof if "Settlor's said wife does not survive him"  is to be held *98 and disposed of under "Article B  The Residuary Trust." The trustees are directed to pay the net income of the Article B trust to the settlor's wife for life and are given a discretionary power to make expenditures out of principal "for the benefit of Settlor's wife and Settlor's children," except that expenditures for the benefit of the wife are not to be made until the funds in the marital trust have been exhausted. Upon the death of the "Settlor's said wife," the income of the trust is to be distributed equally to "Settlor's children" until there are no longer any children under 21 years of age, at which time the trust estate is to be divided equally into such number of shares as there are children of the settlor or collectively issue of a deceased child. Each such share is then to be held on a separate trust, to pay the income to the child for life and to distribute the principal as the child may by will appoint, unless the child exercises a granted power to withdraw stated portions of the principal on attaining specified ages.
Finally, Article B provides in section (c) (3) thereof that "In default of any issue of Settlor and Settlor's said wife, or in the default of such issue during the existence of any Trust established under this DEED OF TRUST" (Emphasis added), the trust estate shall be distributed equally between the Trinity Methodist Church and the Young Men's Christian Association, both of Millville, New Jersey.
The trust indenture, unlike the grandfather's will, contains intrinsic evidence that the word "children" is not to include all natural children of the settlor. The language of the deed of trust makes it clear that its benefits  derived in the first instance from the proceeds of insurance policies on the settlor's life  are to be limited to the family unit resulting from C. Franklin's second marriage, to the "Settlor's wife, Verna Wolf," and the two children of that marriage. Such is the evident implication to be drawn from the various provisions of the deed of trust, including that authorizing invasion of the corpus of the Article B trust "for the benefit of the Settlor's wife and Settlor's children." *99 Were there any doubt as to the settlor's intent to benefit only the children of his second marriage, it is eliminated by the last paragraph of Article B, providing for a gift over to charities "in default of any issue of Settlor and Settlor's said wife."
The judgment "In the Matter of the Estate of C. Franklin Wolf, deceased" is affirmed. The judgment "In the Matter of the Estate of Clarence R. Wolf, deceased" is reversed and remanded for entry of judgment consistent with this opinion.
NOTES
[*] It is to be noted that the 1953 statute, N.J.S.A. 9:3-30(A), a portion of which is quoted supra from the trial court's opinion, dealt separately with the situation where the adopting parent is a stepfather or stepmother, in a proviso reading:

"A. provided, however, that when the adopting parent is a stepfather or stepmother, and the adoption is consummated with the consent and approval of the mother or father, respectively, such adoption shall not affect or terminate any relationships between the child and such mother or father."
L. 1966, c. 196, amended N.J.S.A. 9:3-30(A) to add to the proviso the following:
"nor the rights of inheritance under the intestate laws of this State through the other parent,"
thus restoring to a child adopted by a stepparent the full right to inherit from both his natural parents under the intestate laws.