# MICHAEL MONRONEY v. MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY,

TRUSTEE ET AL.

[No. 12, September Term, 1981.]

*Decided October 15, 1981.*

*Motion for reconsideration filed November 12, 1981; denied November 20, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Donald C. Greenman,* with whom were *William A.*

*Snyder, Jr.,* and *Ober, Grimes & Shriver* on the brief, for appellant.

*R. Samuel Jett,* with whom were *R. Samuel Jett, Jr., Stein & Jett* and *Edward P. Ring* on the brief, for appellees.

RODOWSKY, J., delivered the opinion of the Court.

The principal question presented in this will construction case is whether the appellant takes a remainder under his paternal great-aunt's trust which is to be distributed to the "children" of his natural father. The appellant had been adopted by his stepfather prior to the death of the testatrix. After her death, but prior to the time of trust distribution, Maryland's intestacy laws were changed to exclude inheritance by adopted persons from their natural relatives. For reasons hereinafter set forth, we shall hold that the appellant takes the remainder.

The testatrix is Edna Kenly James (Edna). Edna had one brother who died in infancy in 1883 and one sister, Eleanor Warfield Bacon, who died March 14, 1927. Eleanor Warfield Bacon had only one child, John Kenly Bacon (John). Edna married Joshua Marion James (Joshua). They had no children. The testatrix's nephew, John, and his first wife, Mary Ellen, had one child, the appellant, who was born April 12, 1927 and named John Kenly Bacon, Jr. John and Mary Ellen were divorced June 23, 1930 by a Massachusetts decree which awarded custody of the appellant to his mother. Mary Ellen married Almer Stillwell Monroney. By an Oklahoma decree of November 22, 1938, appellant was adopted by Almer Stillwell Monroney. That decree provided that thereafter appellant should be known as Michael Monroney (Michael). Michael's natural father, John, remarried on August 1, 1930. No children were born as a result of John's second marriage.

Edna executed her will on July 17, 1941. She died in Baltimore on December 19, 1942. As of both dates her closest family consisted of her husband, Joshua, her nephew, John, and her nephew's natural son, Michael. Item 12 of Edna's will created a residuary trust and named as trustee Safe Deposit and Trust Company which, following a merger, is the appellee, Mercantile-Safe Deposit and Trust Company.

In broad outline the trust provides that if Joshua survived Edna, the income was to Joshua for life and then outright to John. If John predeceased Joshua, three-fourths of the corpus is paid equally to the children of John. John died June 13, 1952 and Joshua died December 26, 1976.

Upon termination of the trust by Joshua's death, the corporate trustee was uncertain whether Michael took as a child of John because of Md. Code (1974), § 1-207 (a) of the Estates and Trusts Article, which states that "[o]n adoption, a child no longer shall be considered a child of either natural parent . . . ." The trustee brought the instant action in which it joined the other appellees who are heirs and next of kin of Edna, or their representatives.

In relevant part, Item 12 of Edna's will provides:

> Upon the death of my said husband or upon my death, if he predeceases me, I direct my Trustee to pay and deliver unto my said nephew, JOHN KENLY BACON, the principal or corpus of said trust fund, free and clear of any trust. In the event that my said nephew be not then alive, I direct my said Trustee to pay and distribute three-fourths of the principal or corpus of the said trust fund, equally, free and clear of any trust among such of his children and the descendants of his deceased children as may be then alive, the descendants of his deceased children to take per stirpes and not per capita, and to pay and distribute the remaining one-fourth [equally to persons designated by name who may survive the survivor of Edna and Joshua].
> . . . [I]n the event an intestacy should occur as to any devise or bequest made in this paragraph of my will through the death of all beneficiaries who would otherwise be entitled hereunder, I direct my said Trustee to distribute the property included in such devise or bequest to and among such person or persons as under the then existing laws of the State of Maryland would be my next of kin, had I then

died intestate, and in the proportions prescribed by said laws.

At trial the above facts were presented by an agreed statement. Testimony was also taken, but in the view which we take of the case a review of that testimony is unnecessary. The chancellor filed a written opinion after trial and also upon rejecting a motion for rehearing. He relied on § 1-207 (a) of the Estates Article which was said to apply "because the testatrix expressly directed that the determination of her nephew's children occur upon her husband's death." Thereupon, a decree was entered adjudging that Michael did not take the gift to John's children under Item 12. Michael appealed to the Court of Special Appeals. We granted certiorari prior to consideration of the case by the intermediate appellate court.

## I

"Primary and paramount is the intent of the testator, to be garnered from the meaning of the words he used throughout the will, as well as in the disputed clause, according to their plain import." *Cole v. Bailey,* 218 Md. 177, 180, 146 A.2d 14, 15 (1958). Interpreting the words "dependent children" as they appear in Article III, § 38 of the Maryland Constitution, we said in *Brown v. Brown,* 287 Md. 273, 284-85, 412 A.2d 396, 402 (1980):

> First, it has long been established that the "popular conception of the meaning of the words 'child or children' [of specific individuals] is 'immediate offspring.'" *Billingsley v. Bradley,* 166 Md. 412, 419, 171 A. 351, 354 (1934). *See Ryan v. Herbert,* 186 Md. 453, 561, 47 A.2d 360, 364 (1946); *Webster's Third New International Dictionary* 388 (2d unabr. ed. 1961). Second, it has been stated that the word child "has two meanings in law: (1) In the law of . . . domestic relations, and as to descent and distribution, it is used strictly as the correlative of 'parent,' and means a son or daughter . . . ." *Black's Law Dictionary* 320 (3d ed. 1933).

The term "children" is not specially defined in Edna's will. Michael is the child of John and is literally within the class designated to take.

At the time Edna executed her will, and at the time of her death, an adopted person could inherit from his natural relatives under the Maryland laws of intestate distribution. This was made explicit in the statutes by Chapter 599 of the Acts of 1947, which implemented the Report of the Commission to Study Revision of Adoption Laws of the State of Maryland, chaired by Hon. Eugene O'Dunne. Code (1939, 1947 Cum. Supp.), Art. 16, § 85K (b) was enacted which read:

> The natural parents of the person adopted, if living, shall after the interlocutory decree be relieved of all legal duties and obligations due from them to the person adopted, and shall be divested of all rights with respect to such person; *provided, that nothing in this sub-title shall be construed to prevent the person adopted from inheriting from his natural parents and relatives under the laws of this or any other State.* [Emphasis supplied.]

This 1947 statute, however, made no change in the law as it had existed from the time of Maryland's first adoption statute, Chapter 244 of the Acts of 1892. The report of the O'Dunne Commission, in its syllabus of the bill which became Chapter 599 of the Acts of 1947, states that "the child's right to inherit from its natural parents is preserved." In *Bonnaville v. Shupp,* 228 Md. 390, 392, 179 A.2d 898, 899-900 (1962) we said that prior to Chapter 599 "the law was generally to the effect that the right of an adopted child to inherit from its natural parents and other relatives in the event of their death intestate was not affected or changed by the adoption." *Accord,* 31 Op. Att'y Gen. 270, 271 (1946); Strahorn, *Adoption in Maryland,* 7 Md. L. Rev. 275, 316-17 (1943). (An adopted person "does inherit from his natural relatives despite being adopted. The question has not yet been decided in Maryland but the answer would seem obvious.").

The right of an adopted person to take under the intestacy laws from natural relatives was abolished by Chapter 174 of the Acts of 1963. Code (1957, 1962 Cum. Supp.), Art. 16, § 78 (b) was amended to delete the above-italicized proviso and the following language was substituted:

Upon the entry of a Decree of Adoption the adopted child shall lose all rights of inheritance from its natural parents and from their natural collateral or lineal relatives. The rights of the natural parents or their collateral or lineal relatives to inherit from such child shall cease upon the said adoption. Nothing contained in this section shall limit in any way the right of any person to provide for the distribution of his property by will.

Article 16, § 78 was next amended by Chapter 3, sec. 4 (c) of the Acts of 1969. Chapter 3 was the comprehensive revision of statutes relating to decedents' estates recommended by the Governor's Commission to Review and Revise the Testamentary Law of Maryland, chaired by Hon. William L. Henderson. The second sentence of § 78 (b) was amended to read: "Upon the entry of a decree of adoption, all rights of inheritance between the child and the natural relatives shall be governed by Article 93." In 1974 (Ch. 686) the reference in § 78 (b) to Art. 93 was changed to the Estates Article.

Chapter 3 of the Acts of 1969 also enacted Code (1957, 1964 Repl. Vol., 1969 Cum. Supp.), Art. 93, title, "Decedents' Estates." Relevant here are §§ 1-201 and 1-207 (a). These sections are today the comparably numbered sections of the Estates Article. Section 1-201 provides: "In the absence of express language to the contrary, the rules of construction contained in this subtitle shall be applied in construing all provisions of the estates of decedents law and the terms of a will." Section 1-207 (a) provides:

General Rule. — An adopted child shall be treated as a natural child of his adopting parent or parents. On adoption, a child shall no longer be deemed a

child of either natural parent, except that upon adoption by the spouse of a natural parent, the child shall still be considered the child of such natural parent.

These provisions, which were in effect when the testatrix's husband died, were applied by the chancellor who reasoned thusly:

In this case, the testatrix clearly directed that distribution and determination of remainder interests occur upon the death of her husband (Item 12). The testatrix also directed that in the event of the death of her nephew (the beneficiary of the trust), three-quarters of the trust or corpus should be distributed "among such of his children and the descendants of his deceased children as may be *then* alive." [Emphasis in original.] It is the opinion of this court that the testatrix intended determination of her deceased nephew's children be made at the time of her husband's death, December 26, 1976. This finding dictates the inescapable conclusion that the applicable law of adoption is that which existed on December 26, 1976.

We do not accept this analysis. The reference in the will to the children and the descendants of deceased children of John as may be "then" alive merely fixes the time of survivorship. Under the contingency which occurred, whereby Edna predeceased Joshua, and Joshua survived John, the testatrix is merely making clear that the children and descendants of deceased children of John must survive Joshua. Survivorship of the children will be determined at Joshua's death. However, this is not the same as a gift to the then children of John, then surviving. The testatrix does not direct that those who are children of John be determined in accordance with the law as of the time of the death of Joshua, in addition to determining whether children of John have survived Joshua.

This reading of Edna's will is made clear by two aspects of the further provision of Item 12 dealing with the end limi-

tation at the death of Joshua. That contingent gift is to "such person or persons as under the then existing laws of the State of Maryland would be my next of kin, had I then died intestate . . . ." By specifying laws existing at the time the end limitation operates, Edna expressly recognized the possibility of a change in the laws of intestate distribution occurring between the date of her death and time for distribution of the corpus and she specified the latter "then existing laws" to govern that particular limitation. However, the preceding gift to the children of John is not similarly modified. The possibility of a change in some other context of the meaning of the term "children," *e.g.,* under the intestacy laws, was not expressly addressed in the gift to children of John. This contrast is made even more clear in that part of the end limitation of Item 12 which reads: "[I]n the event an intestacy should occur . . . through the death of all beneficiaries . . . ." The end limitation, in the words used, anticipates an absence of children of John only through death and does not contemplate an absence of children of John due to a possible later and different meaning of "children." Thus the chancellor erred in reading Item 12 as expressing an actual intent on the part of Edna to have those who were the children of John, surviving Joshua, determined by reference to the laws of adoption, or intestate distribution, as they might exist at the death of Joshua.

## II

When inquiry is expanded beyond the four corners of the will to include the only nonultimate fact found by the chancellor concerning the circumstances surrounding execution of the will, a significant factor is added. The chancellor found that "the testatrix was aware of [Michael's] status. . . ." This finding was made in connection with an analysis in which the trial court was "impressed by the fact that [Michael] was not mentioned in the will by name, although all other beneficiaries, including John Kenly, Sr., were specifically named." It was said this "would indicate an intent not to include [Michael] as beneficiary," and that

Edna could have included Michael "in the will if she had desired to do so." We cannot accept this analysis. It is subject to *reductio ad absurdum*. It would mean that dispositions by class description would be ineffective where the testator knew of existing members of the class and did not designate them by name.

The fact that Edna knew that Michael had been adopted by his stepfather and nevertheless made a gift to the children of John, without excluding Michael, indicates that Michael was intended to be included. The word "children" used by Edna embraced Michael, as the natural son of John. At the time the word was used, an adopted person could take by intestacy from natural relatives. At the time the word was used there was no rule of construction under which "children" was presumed to reflect an intent to exclude a child adopted out of the family unless the contrary were clearly expressed.

In this respect the instant case is like *In re Estate of Wolf,* 98 N.J. Super. 89, 236 A.2d 166 (1967), *cert. denied,* 51 N.J. 273, 239 A.2d 662 (1968). There a grandchild had been adopted by his stepfather in 1949. At that time an adopted person could inherit from both natural parents under New Jersey law. That feature of New Jersey law was changed in 1953. The grandfather died in 1966, leaving a 1964 will which made a gift to the "issue" of the grandfather's children. Holding that the grandchild took under the will, the court reasoned as follows (*id.* at 96, 236 A.2d at 170):

> There is nothing in the will or in the surrounding circumstances to warrant a determination that the word "issue" as used therein is to have a more limited meaning so as to exclude a grandchild of the testator merely because he had been adopted by another . . . . The grandfather knew of his grandson's adoption. Had he intended to eliminate [the child] from those who would otherwise take under the will as "issue" of [testator's son], he could have so provided. He did not.

The New Jersey court in *Wolf* quoted from *In re Taylor's Estate,* 357 Pa. 120, 53 A.2d 136 (1947), a case in which the will made a gift to "issue" of the brother of the testatrix. Twenty-six years before the death of the testatrix, her great-nephew had been adopted out of the family. At the time the will was made, and thereafter, Pennsylvania intestacy law did not permit inheritance by an adopted person from his natural relatives. The court held that the question was "one of identity and not of the right of inheritance." The great-nephew took the gift because "in [*sic*] absence of statute directing a different construction, the fact of adoption does not change the claimant's description as issue of [testatrix's brother] whether being construed as made before or after the adoption." *Id.* at 124-25, 53 A.2d at 138. *Accord, Amoskeag Trust Co. v. Haskell,* 96 N.H. 89, 70 A.2d 210, *reh. denied* and *opinion modified,* 96 N.H. 89, 71 A.2d 408 (1950); *In re Tracy,* 464 Pa. 300, 346 A.2d 750 (1975) (adoption out of the family before the will was made); *In re Estate of Zastrow,* 42 Wis. 2d 390, 166 N.W.2d 251 (1969). A contrary result was reached in *Commerce Trust Company v. Duden,* 523 S.W.2d 97 (Mo. App. 1975). There, at the time of the will creating a class of "natural and adopted children," an adopted person was a child of his adoptive parents "for every purpose" and the testator was presumed to know the existing law. This rationale would support Michael's position in the instant case.

The author of a 1964 annotation, *Adoption by Third Person as Excluding One Who Otherwise Answers to the Description of a Testamentary Beneficiary,* 96 A.L.R.2d 639, 641, summarizes the decisions to that time as follows:

> Decisions which do not appear to have been controlled by statutes directing particular construction of terms in a will have uniformly held that terms describing a beneficiary by his relationship to another include one who would ordinarily fall within the described relationship, but because of an adoption bears a relationship different from any that would answer the testamentary description.

Terms of this sort discussed have included "child" or "children," "heirs at law," and "descendants."

Statutes, as a general matter, have served to change this rule. The only statutes expressly dealing with the construction to be given such terms in a will which have been interpreted by the courts are those of Pennsylvania, the most recent of which has been held to direct that in construing a will any person adopted before the death of the testator, unnamed in the will, shall not be considered and allowed to take as the child of his natural parents. [Footnotes omitted.] [1]

In the matter at bar the language used by Edna in her will includes Michael. Absent a contrary construction required by statute, that language governs.

### III

The issue in this case thus resolves itself to whether changes in the rights of an adopted person under Maryland law, which occurred after Edna's death but before the time for distribution of the corpus, give rise to a rule of construction. There is no such rule of construction which is applicable here.

Chapter 174 of the Acts of 1963, which for the first time provided in present Art. 16, § 78 (b) [2] that the adopted child "shall lose all rights of inheritance from its natural parents

---

1. The reference is to the Pennsylvania Wills Act of April 24, 1947, 1947 Pa. Laws 89, § 14 (20 Pa. Const. Stat. Ann. § 6114 (Purdon 1975)). It does not apply to the wills of persons dying prior to its effective date. *See* Dickinson Estate, 4 Pa. D. & C. 2d 78 (1955).

2. Md. Code (1957, 1981 Repl. Vol.), Art. 16, § 78 (b), reflecting the changes reviewed above, today provides as follows:

> (b) The natural parents of the person adopted, if living, shall after the interlocutory decree be relieved of all legal duties and obligations due from them to the person adopted, and shall be divested of all rights with respect to such person. Upon the entry of a decree of adoption, all rights of inheritance between the child and the natural relatives shall be governed by the Estates Article of the Code. Nothing contained in this section shall limit in any way the right of any person to provide for the distribution of his property by will.

and from their natural collateral or lineal relatives," in terms deals only with intestate distribution. It does not announce a rule of construction.[3]

Section 78 (b) also expressly states it shall not "limit in any way the right of any person to provide for the distribution of his property by will." This seems to be an expression of legislative policy which would preclude basing on the 1963 statutory change a judicial rule of testamentary construction which would attribute to the testator, using the word "children" without qualification, an intent to exclude children adopted out of the family. *See In re Estate of Bissell,* 74 Misc. 2d 330, 342 N.Y.S.2d 718 (1973).

In any event, we would not adopt such a rule of construction in this case. To do so would be to apply the change of policy occurring in 1963 to the construction of the word "children" in the will of one who died in 1942. *Gutman v. Safe Deposit and Trust Co.,* 198 Md. 39, 81 A.2d 207 (1951) is on point. Prior to 1947 an adopted person took by intestacy only from an adopting parent, but not from the relatives of the adopting parent. *Eureka Life Insurance Co. v. Geis,* 121 Md. 196, 88 A. 158 (1913); Md. Code (1939), Art. 16, § 81. Chapter 599 of the Acts of 1947 amended the testamentary law, Code (1939, 1947 Cum. Supp.), Art. 93, § 139A, to provide that

---

**3.** Ch. 174 of the Acts of 1963 repealed and re-enacted with amendments Md. Code (1957, 1962 Cum. Supp.), Art. 16, § 78. In so doing it re-enacted a rule of construction which was part of the original adoption statute of 1892 as it had been amended by Ch. 599, § 85K (c) of 1947 Laws, Ch. 247 of the Acts of 1957 and Ch. 287 of the Acts of 1961. It was in effect at the time of Joshua's death and is today Code (1957, 1981 Repl. Vol.), Art. 16, § 78 (c) which reads:

The term "child," "heir," "issue," "descendant," or an equivalent in a deed, grant, will or other written instrument shall be held to include any adopted person, unless the contrary plainly appears by the terms thereof, whether such instrument was executed before or after the entry of the interlocutory decree of adoption, if any, and if none, before or after the entry of the final decree of adoption; in the event such instrument was executed prior to June 1, 1947, the provisions of this subsection shall apply to those adopted persons as to whom the interlocutory decree of adoption, if any, and if none, the final decree of adoption was entered on or after June 1, 1947.

Because we decide this case on other grounds, we do not address whether § 78 (c) applies to adoptions out of a family.

there shall be no distinction between a legally
adopted child and a child by birth, to the end that
such adopted child shall take from, through and as
a representative of its adopting parent or parents
and the lineal or collateral kindred of such adopting
parent or parents in the same manner as a child by
birth. . . .

Frederica Gutman died in 1923. Her 1922 will created a
trust under which the income was paid to her children or to
the "descendant or descendants of a deceased child" until the
death of the survivor of her children. The testatrix's son,
Morton, had adopted his second wife's natural child,
Leonard, in 1928. Morton died in 1948. His adopted son
claimed a share of the income as Morton's descendant and
relied on the 1947 amendment to the testamentary law. The
adopted child argued that "[t]he law to be applied in
determining whether an adopted child is a 'descendant' for
the purpose of taking under a will of the adoptive parent's
mother is the law in effect at the death of the adoptive parent
and the termination of the life estate," and that "[i]n the
absence of a clear intent to the contrary, a testator is pre-
sumed to intend the application of the law in existence when
the identity of the persons who are to take the future estate
is determined." Brief for Appellant at 7-8, *Gutman v. Safe
Deposit and Trust Co., supra.* After citing authorities includ-
ing *State Tax Commission v. Potomac Electric Power Co.,*
182 Md. 111, 117, 32 A.2d 382, 384 (1943) (" 'It is well settled
that a statute will not be given a retrospective operation,
unless its words are so clear, strong and imperative in their
retrospective expression that no other meaning can be
attached to them, or unless the manifest intention of the
Legislature could not otherwise be gratified.' "), this Court
held:

Mrs. Gutman's will was probated in 1923,
twenty-four years before the Act of 1947 was passed
by the Legislature. The Legislature did not intend
to disturb her will, and rights which had become
vested under it, for it enacted that the Act should

> not go into effect before June 1, 1947. The Act, on its face, was clearly prospective and not retrospective. [198 Md. at 44, 81 A.2d at 209.]

The Act which excluded adopted persons from inheriting by intestacy from their natural parents, Chapter 174 of the 1963 Laws, took effect June 1, 1963. It contains no manifest legislative intention that it operate retrospectively. While *Gutman* dealt with adoption into a family and the instant matter involves the problem of adoption out, we see no reason why the result here should differ from the holding in *Gutman.* For us to create a presumption of intent, or rule of construction, predicated on the 1963 change in the intestacy laws, and apply it to Edna's 1941 will, would be the same type of retrospective application rejected in *Gutman.*

The General Assembly *has* enacted a rule of construction dealing with adoption out of a family. It is found in §§ 1-201 and 1-207 (a) of the Estates and Trusts Article, under subtitle 2, "Determining Relationships," of Title 1. The Henderson Commission comment to § 1-201 in part states that "[c]onsistent with the view that all aspects of testamentary law should be as uniform as possible, the rules of construction set forth in this Part [Subtitle] should be applicable both in construing the provisions of this Article and in construing wills." Section 1-207 (a) now states, and stated as of the time for distribution of the corpus of Edna's Item 12 trust, that an adopted child shall no longer be considered a child of either natural parent. However, this rule of construction is not applicable to Edna's will. Section 12-102 (b) of the Estates Article provides, *inter alia,* that Title 1 applies to the estate of any decedent dying on or after January 1, 1970. Section 12-102 (d) in part provides that "[a]s to the rules relating to any will executed before January 1, 1970, the law before January 1, 1970 shall be applicable." The revisor's note to § 12-103 states that § 12-102 (d) "contains also a new provision which incorporates the pre-1970 rules of construction to any will executed before 1970."

As an alternate ground of decision the trial court applied Code (1957, 1969 Repl. Vol.), Art. 93, § 1-207. The chancellor reasoned that § 12-103 of the Estates Article directed him to statutes in effect before January 1, 1970 when it said that "the administration on or after January 1, 1970 of estates of persons who died before January 1, 1970 shall be governed by those statutes in effect before January 1, 1970." Without implying whether or not rules of will construction are matters of "the administration . . . of estates," within the meaning of § 12-103 of the Estates Article, the short answer is that Art. 93, as enacted by Chapter 3 of the Acts of 1969, was not in effect until 12:01 a.m. on January 1, 1970.

## IV

Edna's will does not express an intent to apply future law to the determination of who is a child of John. The changes in the adoption and intestate distribution laws, occurring after the death of Edna, do not by their terms affect the will of Edna. Legislative rules of construction concerning adoption out of a family do not apply. When Edna signed her will and when she died Michael was the son of John even though he was adopted out of the family of John. Edna's gift to the children of John includes Michael.

In the exercise of our discretion under Rule 882 a, costs shall be paid out of the three-fourths share of the Item 12 trust. *Hall v. Elliott,* 236 Md. 196, 216, 202 A.2d 726, 737 (1964).

> *Decree of the Circuit Court of Baltimore City reversed and case remanded to that court for the entry of a decree consistent with this opinion.*
>
> *Costs to be paid out of the three-fourths share of the item 12 trust.*